[S. F. No. 16097. In Bank.—August 7, 1939.]

WILLARD D. PAINE, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Harry J. Bias, W. A. Deans and Bert B. Snyder for Petitioner.

J. E. Gardner, Philip T. Boyle, Harry M. Parker, A. W. Sans, Gilbert B. Perry, Rolland T. Maher, Anthony J. Franich, C. R. Taylor, Roy M. Sayre, Stanford G. Smith, John H. Leonard, Paul W. Murray, Emmet L. Rittenhouse, Donald Younger, Benj. B. Knight, Francis R. Hall, Paul E. Colegrove, James J. Scoppettone, Simon M. Collins, J. Frank Murphy, Geo. G. Graham, Lew W. Collins, Emmet C. Rittenhouse, J. L. Johnston, J. L. McCarthy, R. H. Hudson and J. A. Wyckoff, as *Amici Curiae*, on Behalf of Petitioner.

Philbrick McCoy for Respondent.

THE COURT.—On a reconsideration of this matter, we cannot conclude that the petitioner should be absolved from all discipline, as is so earnestly sought on petition for rehearing. On the record presented the petitioner should be subjected to some substantial discipline. We are persuaded, however, that the ends of justice will be subserved by the reduction of the period of suspension from two years to six months. Accordingly, the following portion of the opinion heretofore rendered is adopted and the period of suspension reduced as indicated:

"This is a petition to review a recommendation of the board of governors of The State Bar that petitioner be suspended from practice for two years.

"The charges against petitioner were the making of false allegations in a petition to the probate court for compromise of a claim, and the procuring of a conveyance of property of the estate to another client without adequate consideration. The facts advanced in support of these charges were as follows: The decedent, Louis C. Rapetta, died intestate in 1934. His son and only heir at law, Clement S. Rapetta, received letters of administration. Petitioner was attorney for the administrator. The major part of the estate consisted of real property in Santa Cruz county, a certain parcel of which was a dairy ranch. This ranch had been mortgaged in 1931 to Harry Von Bargen to secure a

two-year note for $3,700. It was past due at the time of the decedent's death.

"Shortly after the issuance of letters of administration, Von Bargen called on petitioner to discuss the obligation. Petitioner asserts that the mortgagee demanded payment, though Von Bargen denies this. Petitioner thereafter consulted another client, Mrs. Theresa Mattei, and advised her that the mortgage on the Rapetta property would be a good investment for her. Petitioner then states that he communicated with Von Bargen requesting that he place the note and mortgage in escrow preparatory to Mrs. Mattei's purchase of it; this Von Bargen also denies.

"On October 29, 1934, petitioner prepared and filed a petition by the administrator to compromise a claim against the estate. In it he stated that Mrs. Mattei was the holder of the Von Bargen note and mortgage; that she had made demand for payment; and that a compromise had been agreed upon whereby the property would be deeded to her in satisfaction of the mortgage. These statements were not true, for at that time Von Bargen still owned the note and mortgage. The petition also contained a description of the property which included a small parcel not actually included in the mortgaged parcel. The petition was heard, its allegations found true, and the court ordered the execution of a deed of the property described to Mrs. Mattei as prayed. This was done. Some time later, C. D. Stocking, a real estate broker, informed Von Bargen of the sale, and shortly thereafter petitioner paid Von Bargen the money due him from the funds furnished by Mrs. Mattei.

"Charges were filed against petitioner before the local administrative committee by Stocking and Von Bargen. The first letter to petitioner by the secretary of the committee, dated July 26, 1935, declares that the substance of the charges was that the court's order was made upon misrepresentations in the petition, and that 'attempts of C. D. Stocking to purchase said property as a real estate broker prior to said proceedings in said estate were frustrated by you'. After a preliminary hearing the matter was dropped. On October 27, 1937, more than two years later, a notice to show cause was issued by the committee, setting forth the same charges in more detail. Stocking and Von Bargen were again the complainants. Another hearing was had. The report of the committee recites that Stocking 'claimed to have been de-

prived of the privilege of bidding on the property or finding a purchaser therefor, stating that the property was worth much more than the amount of the mortgage'. After reviewing the facts in detail, the committee found that petitioner was guilty of the false statements in the petition to compromise, and that the probate court had relied on them in making its order authorizing compromise; and 'that the effect of the proceeding was to obtain for Theresa Mattei title to the real property without following the procedure prescribed by law applicable to sales in probate, thus depriving the estate of the safeguards provided by law relating to competitive bidding'. The committee concluded that he was guilty of professional misconduct and recommended a 'public reproval' by the board of governors. The proceeding came before the board of governors, and that body recommended that petitioner be suspended from practice for a period of two years.

"Throughout the proceedings petitioner conceded that, strictly speaking, the statements in the petition concerning the ownership of the note and mortgage were not true, but stated his belief that they were substantially true. He refers vaguely to the transaction as an 'escrow' in the sense that the negotiations were going forward under which Mrs. Mattei would pay the money and become the 'equitable' owner of the mortgage; and points out further that the facts were all known to the administrator and sole heir, and the transaction was entered into with his approval. With respect to the additional property deeded to Mrs. Mattei, petitioner contends that though it may not have been described in the mortgage it was considered by all parties to be a part of the mortgaged tract, and contained a water right appurtenant thereto. We need not dwell on these defenses because it seems clear that petitioner as a reasonably competent attorney must have known that these statements in the petition were not true. The specific charge of misleading the court by a false document was proved, and discipline was therefore warranted.

"There remains for consideration the extent of the disciplinary measures to be taken. Petitioner contends in his defense that the complainants in the proceedings had no legitimate interest in the matter; that the parties in interest made no complaint; that petitioner was not shown to have benefited by the transaction; and that no one suffered any real

injury.  The local committee found: 'Apparently no one has suffered any financial loss by reason of the transaction.  The administrator who is also the son and only heir appeared in court at the time of final distribution and stated that he approved all acts of the respondent done in his behalf.  C. D. Stocking brought the transaction to his attention, by letter, immediately after the order was made authorizing the compromise, but the communication was referred by Rapetta to the respondent.  Rapetta has not made known any complaint which he might have.'

"Nevertheless, the plan conceived by petitioner was unworthy of an ethical practitioner.  Honesty in dealing with the courts is of paramount importance, and misleading a judge is, regardless of motives, a serious offense."

It is ordered that the petitioner be suspended from the practice of the law for a period of six months from the date of the filing of this opinion and order.

CURTIS, J. and EDMONDS, J., Dissenting.—We dissent from that part of said order fixing the petitioner's term of suspension at six months instead of two years as provided in our previous decision.  The record in this case shows the petitioner to be guilty of a most serious offense.  A suspension of two years as recommended by the Board of Governors of The State Bar cannot, under all the circumstances of this case, be considered too severe a penalty to be imposed for such an offense.