[S. F. No. 22057. In Bank. Sept. 8, 1965.]

BENJAMIN F. MARLOWE, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Grant Rounseville and Harry Gonick for Petitioner.

F. LaMar Forshee for Respondent.

THE COURT.—This is a proceeding to review the recommendation of the Board of Governors of the State Bar that petitioner be suspended from the practice of law for six months.

A local administrative committee concluded that petitioner violated his oath and duties as an attorney and committed

acts involving moral turpitude and dishonesty. It also decided that petitioner wilfully violated rules 4 and 8 of the Rules of Professional Conduct of the State Bar of California. Rule 4 provides that, "A member of the State Bar shall not acquire an interest adverse to a client." Rule 8 provides that a member, "shall not directly or indirectly purchase property at a . . . judicial sale in . . . [a] proceeding in which such member appears as attorney for a party." The local committee rendered findings of fact which purported to support these conclusions.

The Board of Governors modified the findings of fact to some extent, but adopted the recommendation of the local committee that petitioner should be suspended from practice for six months.[1]

 We have concluded that petitioner's conduct warrants discipline, but that on the record before this court six months' suspension is excessive and that a three months' suspension is proper.

The record indicates that petitioner has been a member of the State Bar since 1946 and that he has not been subjected to any prior disciplinary proceeding. As to the instant matter, the proceedings disclose that some time prior to January 1958 Mrs. Obelia Williams retained petitioner to recover over $2,000 in past due alimony payments. In January 1958 petitioner caused a writ of execution to issue on real property located at 1637 Chestnut Street in Oakland owned by Mrs. Williams' ex-husband. On January 30, 1958, the Alameda County marshal levied on the premises. On February 18th petitioner deposited the necessary costs for publication and notice of sale. The committee found that on March 3rd petitioner informed Mrs. Williams of the time and place of the marshal's sale and that she could bid on the property or give him authorization to do so. Again on March 17th, the day before the sale, he called Mrs. Williams and informed her of her rights at the sale. He further informed her that he could not attend the sale because of a trial the next day. Mrs. Williams indicated she had no interest in the property, but only wanted money in payment of the alimony obligation.

On March 18th the marshal held the sale. Mrs. Williams did not appear. The only persons present were a deputy marshal, petitioner's wife and his secretary. Mrs. Marlowe asked the marshal if she could bid on the property. He informed

---

[1]One member voted that the penalty was excessive; another voted to dismiss the proceedings against petitioner.

her she could. Mrs. Marlowe made the only bid, paying the marshal with a check for $50 drawn on the Crocker-Anglo Bank.

That evening Mrs. Marlowe told petitioner she had purchased the property. On April 11, 1958, petitioner informed Mrs. Williams of the purchase and indicated he anticipated redemption by the prior owner. The prior owner, however, did not redeem and in April 1959 petitioner forwarded Mrs. Williams a personal check for $50 as the proceeds from the sale. In September 1959 petitioner obtained a marshal's deed for the property apparently made out to Mrs. Marlowe.

On November 2, 1959, petitioner and Mrs. Marlowe executed a joint promissory note payable to the Oakland Bank of Commerce in the sum of $2,179.20. The note was secured by a deed of trust on the Chestnut Street property signed by Mrs. Marlowe. In September 1960 petitioner executed another promissory note to the same bank. This note was secured by the pledge of two automobiles and also was a "further advance" on the November 1959 deed of trust. In March 1961 petitioner executed an agreement which consolidated the two prior loans. Finally, in February 1962 petitioner signed an agreement substituting collateral on the consolidated loan. The real estate at Chestnut street, however, apparently continued to serve as security.

■ Petitioner contends that his conduct is not culpable. He first argues that, because Mrs. Marlowe purchased the property in her name, it became her separate property (see Civ. Code, § 164). He therefore contends that he did not acquire any interest in the property. We cannot adopt this proposition; an attorney cannot hide behind the apronstrings of the community property laws to avoid an obligation to his client.

Petitioner next contends that the evidence demonstrates that he is not subject to discipline because of any improper conduct at the marshal's sale. He argues that uncontradicted evidence indicates that he did not know Mrs. Marlowe would attend the sale. The evidence, he states, shows that the marshal called his office and said that someone from his office should be at the sale; that he was at trial at the time; that his secretary contacted Mrs. Marlowe, who was formerly petitioner's secretary, and that Mrs. Marlowe decided she had better go to the sale; that Mrs. Marlowe had no intention of buying the property when she went to the sale, but when she found no one else was there to bid, she bid $50; that this is

corroborated by the fact that Mrs. Marlowe had to borrow a check from the marshal's office to make the bid.

Respondent apparently accepts the above stated contention. It sets forth: ''To narrow the area of controversy, it may be said that the testimony in this record establishes that the two ladies [Mrs. Marlowe and petitioner's secretary] attended the sale and Mrs. Marlowe bid on the property without Petitioner's prior knowledge or assent.'' In its view the ''crucial question'' centers upon ''whether on this record the conclusion is reasonably warranted that Petitioner is culpable beause of his conduct *after* he learned Mrs. Marlowe had purchased the property.''

Respondent's position indicates that neither rule 4 nor rule 8 may serve as a basis for discipline against petitioner. If the property was purchased without petitioner's ''knowledge or assent,'' we cannot hold that he ''wilfully'' acquired the property, or that he ''wilfully'' purchased the property, even in an indirect manner.

The mere fact that petitioner did not violate these rules, however, does not exonerate him. (See rule 1 of Rules of Professional Conduct of the State Bar.) ''The commission of any act involving moral turpitude, dishonesty or corruption . . . constitutes a cause for . . . suspension.'' (Bus. & Prof. Code, § 6106.) ''Moral turpitude, broadly defined, is conduct which is contrary to justice, honesty and good morals.'' (*Fall* v. *State Bar* (1944) 25 Cal.2d 149, 160 [153 P.2d 1] ; *Arden* v. *State Bar* (1959) 52 Cal.2d 310, 321 [341 P.2d 6].)

Petitioner's conduct in his relationship with Mrs. Williams fails to meet the high standards imposed on members of the bar of this state. ''An attorney's duty of fidelity to his client involves far more than refraining from exercising undue influence. His fiduciary duty is 'of the very highest character.' . . . For this reason all business dealings between an attorney and client whereby the attorney benefits are closely scrutinized for any unfairness on the attorney's part.'' (*Magee* v. *State Bar* (1962) 58 Cal.2d 423, 430 [24 Cal.Rptr. 839, 374 P.2d 807].)

We should, therefore, closely scrutinize petitioner's conduct after the judicial sale. The Board of Governors found that, ''From and after expiration of the period of redemption [March 1959] following said execution sale, Respondent [petitioner here] wilfully exercised dominion and control over said property as an owner thereof, adverse to the

interest of his client, Obelia Williams."[2] Respondent contends that the evidence of the financial transactions between petitioner and the Oakland Bank of Commerce between November 1959 and February 1962 substantiates the finding.

The evidence in our view supports the conclusion that petitioner did exercise control over the property. From these transactions we may reasonably infer that petitioner caused the property to be used as security for the November 1959 loan. That loan apparently benefited petitioner. Although petitioner's testimony contains some inconsistencies, petitioner's most credible testimony shows that he "imagined" the money from the loan went into his account. The later consolidation and revision agreements, signed only by petitioner, also indicate that he exercised control over the property. Finally, Mrs. Marlowe's testimony supports the inference that she was not accustomed to business or property transactions and would most probably leave these to petitioner. ■ Petitioner bears the burden of proving that the board erred in its conclusion. (*Linnick* v. *State Bar* (1964) 62 Cal.2d 17, 19 [41 Cal.Rptr. 1, 396 P.2d 33].) He has not met that burden.

■ Placed in this position of control over the property, petitioner failed to safeguard the interests of his client. He must have realized the importance of the property to her interests because it constituted the major, if not the only, source from which she could recover the alimony payments. He estimated the property was worth about $3,500. At the very least petitioner should have advised Mrs. Williams that she should seek independent legal advice. More properly he should have held the property for Mrs. Williams as a constructive trustee, instead of using it for his own benefit. If, as petitioner asserts, Mrs. Williams did not want the property, petitioner should have endeavored to sell or rent the property to obtain the liquidity Mrs. Williams desired. Petitioner argues that there was no market for the property. That proposition, however, is somewhat beside the point since petitioner took no actual steps to sell the property for Mrs. Williams.

Petitioner contends that he tendered the property to Mrs. Williams but that she refused the tender. In March 1962 Mrs. Williams, through her new attorneys, filed an action against petitioner and Mrs. Marlowe seeking to impose a constructive trust on the Chestnut Street property and for an accounting

---

[2]This finding was not included in the findings of the local committee but was added by the Board of Governors.

and damages.[3] In an answer and cross-complaint filed in April 1962 the defendants prayed that ". . . plaintiff be made to do equity towards defendants and accept back said real property and pay to defendants the sum of $943.85 expended by defendants plus interest. . . ." Treating this prayer as a tender, we believe it comes rather late to exculpate the petitioner. Petitioner also testified that he "just disclaimed any interest even before the civil suit or before the Bar hearing." He also testified he tendered back the property to Mrs. Williams but she did not accept it. Mrs. Marlowe also testified that petitioner offered the property back to Mrs. Williams, although she was unable to say when petitioner did so.

As respondent points out, petitioner's testimony relating to the tender lacks definiteness. Petitioner does not explain when or under what circumstances he tendered the property. Moreover, his testimony is self-serving and substantially uncorroborated. Even assuming petitioner tendered the property "before the suit," he still for over two years after the period of redemption could have possessed control over the property; yet he failed during the entire period to protect Mrs. Williams' interest.

Petitioner also contends that although Mrs. Williams knew of Mrs. Marlowe's purchase she took no action to communicate with him after the redemption period; that he did not know she wanted the property until after she filed the suit against him. Assuming the truth of both propositions petitioner has not fulfilled his duty to his client. This conclusion becomes particularly clear in view of Mrs. Williams' relative inability to deal with business matters. (See *Magee* v. *State Bar* (1962) 58 Cal.2d 423, 431 [24 Cal.Rptr. 839, 374 P.2d 807].) Nor can we accept petitioner's contention that the attorney-client relationship ended in April 1959 when he sent the check to Mrs. Williams representing the proceeds of the sale: petitioner, through his attorney, stipulated at the hearing that the attorney-client relationship continued until November 1960.

Thus the record supports the conclusion that petitioner's

[3] *Obelia Williams* v. *Bernice Marlowe and B. Marlowe,* Alameda County Superior Court No. 313717. The parties have stipulated to, and the court has entered, a judgment which provides that Mrs. Williams and Mrs. Marlowe hold the property as tenants in common. Mrs. Marlowe takes a one-third interest and Mrs. Williams takes a two-thirds interest. The stipulated judgment provides that petitioner "neither claims nor has any interest in said property." Apparently petitioner was dropped as a party to the civil suit at the pretrial conference.

conduct does not meet the high standards imposed on the members of the bar of this state. Petitioner should have used the property to subserve the interests of his client, not to enhance his own interests.

Petitioner urges several other propositions that do not reach the substance of the case. He implies that the examiner was derelict in his duties because he did not present certain evidence favorable to petitioner. Petitioner, however, was afforded ample opportunity to adduce that evidence. Although he suggests that the disciplinary action emanated from "malice" toward him, nothing whatsoever in the record supports such an accusation.

The remaining inquiry, then, turns upon whether the board's recommendation that petitioner be suspended for six months constitutes a proper punishment. Respondent apparently admits that petitioner did not violate rules 4 or 8 of the Rules of Professional Conduct of the State Bar: he acquired the property in an innocent manner. His culpability thus is reduced to errors of omission while he was in control over the property. Moreover, Mrs. Williams now has a substantial interest in the property.

The cases cited by the respondent to support the recommended punishment do not pertain to the instant situation. In *Lantz* v. *State Bar* (1931) 212 Cal. 213 [298 P. 497], the attorney persuaded his client to convey and will property to him. The court imposed a suspension for one year. In *Krieger* v. *State Bar* (1954) 43 Cal.2d 604 [275 P.2d 459], the attorney solicited an investment from his client without disclosing his interest in the company or other material facts regarding the company. The court imposed a two-year suspension. In *Fleming* v. *State Bar* (1952) 38 Cal.2d 341 [239 P.2d 866], the attorney had "permitted his personal interests to become . . . enmeshed with those of a client" but was not guilty of moral turpitude. The court reduced the punishment to a public reprimand.

Petitioner is suspended from the practice of law for a period of three months, commencing 30 days after the filing of this opinion.