[L.A. No. 30508. July 19, 1976.]

ARTHUR E. LESTER, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Arthur E. Lester, in pro. per., for Petitioner.

Herbert M. Rosenthal and Arthur L. Margolis for Respondent.

## OPINION

**THE COURT.**—This is a proceeding to review a recommendation of the Disciplinary Board of the State Bar that petitioner be suspended from the practice of law for two years upon conditions of probation, including actual suspension for two months and the making of restitution to former clients.

Petitioner was admitted to the practice of law in 1947. In a notice to show cause, he was charged with violation of his oath and duties as an

attorney (Bus. & Prof. Code, §§ 6103, 6067, 6068) and the commission of acts involving moral turpitude, dishonesty and corruption (Bus. & Prof. Code, § 6106).

After a hearing on both charges, the local administrative committee found that petitioner engaged in a continued course of dishonest conduct whereby he wilfully failed to perform legal services for which he was retained and failed to refund all or any portion of advance fees until compelled to do so by a court of law or the pendency of a disciplinary hearing.

The board substantially adopted the committee's findings as well as its recommendation that petitioner be suspended for a period of two years on conditions of probation including actual suspension for the first two months and restitution to clients in the amounts of $200 and $350, plus interest.

Petitioner does not challenge the factual findings of either the committee or the board, but rather, requests that this court accept as sufficient the recommended discipline of actual suspension for two months or until restitution is made. In light of the nature of petitioner's misconduct, however, it appears that a more stringent penalty is warranted.

*The Susan M. Matter*

On November 23, 1970, petitioner received $500 from Susan M's parents to represent her in a paternity suit for a child subsequently born on December 31, 1970. Between January 1, 1971, and August 1972 petitioner made no attempt to establish the child's paternity and Susan's parents finally requested that he discontinue his efforts on the case. Between August 1972 and March 1973 Susan's parents repeatedly demanded that petitioner refund their $500 retainer but he returned no portion of such sum until March 29, 1973, when they obtained a default judgment from a small claims court in Riverside County directing him to refund the entire retainer. The record indicates that at no time did petitioner request information from Susan's parents concerning the case nor did he ever attempt to contact Susan.

*The Dennis Matter*

On June 4, 1971, Laurence T. Dennis gave petitioner a $400 retainer to represent him on a drunk driving charge. On June 7, 1971, petitioner

appeared at an arraignment on behalf of Mr. Dennis and entered a plea of not guilty. Mr. Dennis passed away on June 9, 1971, and two or three days later, Mrs. Dennis informed petitioner of her husband's death so that he would discontinue work on the case and return the unearned balance of the $400 retainer. After two or three weeks passed and petitioner failed to return the sum, Mrs. Dennis decided to ask petitioner to assist her on additional legal matters. He agreed to perform the services she requested and subsequently assured her that he had corresponded with an attorney in Nebraska concerning the estate of her father-in-law and had prepared an affidavit to terminate joint tenancy title to the Dennis home. Mrs. Dennis thereafter attempted to contact petitioner but he repeatedly failed to return her calls. He claims that he avoided speaking with the woman because she commenced each conversation with a demand for a refund of the entire $400 retainer. Mrs. Dennis, however, maintains that she was prompted to request return of the money when she learned that petitioner had neither filed the papers necessary to terminate the joint tenancy nor written to the attorney in Nebraska.

*The Giaque Matter*

On September 17, 1971, Don Giaque retained petitioner to file an action against his former wife, Pansy, for fraud, conversion and embezzlement and paid petitioner a fee of $750 for his services. Between September 1971 and January 1972 petitioner took no action on the Giaque case although he repeatedly promised his client that he would file a complaint "in three or four days." On January 16, 1972, Giaque complained in writing to the State Bar about petitioner's failure to file suit. The State Bar sent petitioner two letters concerning the Giaque matter to which he replied ". . . I shall file the suit and continue my attempts to locate the defendant after filing." Giaque, however, heard nothing further from petitioner. Petitioner ignored Giaque's repeated demands for return of the $750 retainer until he became aware that the State Bar was investigating the matter. He then refunded the entire sum.

Petitioner told the committee that he was forced to delay filing suit because Giaque did not provide him with a list of the specific items of property which had been taken or his former wife's address. Petitioner, however, never asked Giaque for the address. Moreover, petitioner now concedes that there was no justification for his professional conduct but that "the only explanation . . . is that Mr. Giaque became most obnoxious to petitioner personally."

*The Foster Matter*

In January 1971 the Fosters paid petitioner a $350 fee to represent their son, James Dale, in connection with an attempted escape charge. On June 8, 1971, James Dale was convicted of the charge and sentenced to state prison. In January 1972 Mrs. Foster asked petitioner about the possibility for obtaining her son's release from prison and petitioner told her that he could probably arrange for a court hearing but would need more money in order to finance a trip to Tehachapi, where James Dale was confined, and to pay court costs. Accordingly, Mrs. Foster gave petitioner an additional $350 and he promised to visit James Dale the following week and to make certain that the case was set for a hearing within six weeks.

Mrs. Foster did not hear from petitioner within the subsequent six-week period nor did petitioner contact James Dale. After failing to reach petitioner by telephone, Mrs. Foster and James Dale's wife went to his office to discuss the case. When petitioner returned from court, he was infuriated to find the women there and told them "he didn't want us over to his office birddogging him around and he didn't want us coming in his office any more . . . he didn't want to hear from us anymore and that he wanted us to get out of his office and stay out . . . ."

Petitioner's behavior in each of the matters now before us unquestionably constitutes serious misconduct. As we have repeatedly stated, willful failure to perform legal services for which an attorney has been retained in itself warrants disciplinary action, constituting a breach of the good faith and fiduciary duty owed by the attorney to his clients. (*Simmons* v. *State Bar* (1970) 2 Cal.3d 719, 729 [87 Cal.Rptr. 368, 470 P.2d 352]; *Clancy* v. *State Bar* (1969) 71 Cal.2d 140, 146 [77 Cal.Rptr. 657, 454 P.2d 329].) Moreover, in cases such as the present one, when an attorney's disregard of his clients' interests is "habitual" (*Ridley* v. *State Bar* (1972) 6 Cal.3d 551, 560-561 [99 Cal.Rptr. 873, 493 P.2d 105]; *Grove* v. *State Bar* (1967) 66 Cal.2d 680, 683 [58 Cal.Rptr. 564, 427 P.2d 164]) or when failure to render services is combined with failure to communicate with a client and with misrepresentation, severe discipline has been imposed. (*Alkow* v. *State Bar* (1971) 3 Cal.3d 924, 936 [92 Cal.Rptr. 278, 479 P.2d 638].)

Petitioner requests that in determining the appropriate discipline to be imposed we consider his reputation in the Riverside community as an "honest and ethical" attorney. He offers, however, no mitigating

circumstances to justify or excuse his behavior in the four matters presented here. With the exception of conceding that his conduct in the Giaque case was "unjustifiable," petitioner has shown no remorse for his actions. (*In re Silverton* (1975) 14 Cal.3d 517, 523 [121 Cal.Rptr. 596, 535 P.2d 724].) Furthermore, this concession itself stands in direct contradiction to petitioner's testimony before the local committee, that he had failed to take action on Mr. Giaque's behalf because he was not provided with an adequate list of the items purportedly missing, and therefore, casts considerable doubt upon his truthfulness during the entire disciplinary proceeding. (See *Scofield* v. *State Bar* (1965) 62 Cal.2d 624, 628 [43 Cal.Rptr. 825, 401 P.2d 217].)

■ Thus, although this court generally attaches great weight to the disciplinary recommendation of the board (*Silver* v. *State Bar* (1974) 13 Cal.3d 134, 147 [117 Cal.Rptr. 821, 528 P.2d 1157]), we are not averse to imposing a more severe penalty when it is warranted. (*Silver* v. *State Bar, supra,* 13 Cal.3d 134, 147.) ■ In view of the pattern of misconduct evidenced by petitioner's actions in the four matters now before us as well as his lack of candor in testifying before the committee (see *In re Bogart* (1973) 9 Cal.3d 743, 749 [108 Cal.Rptr. 815, 511 P.2d 1167]) and his general lack of insight into the wrongfulness of his actions, a period of six months' actual suspension is appropriate.

Accordingly, it is ordered that petitioner be suspended from the practice of law for a period of two years upon conditions of probation, including actual suspension for the first six months; reimbursement to his client, Dennis, in the amount of $200 plus interest; reimbursement to his client, Foster, in the amount of $350 plus interest; and compliance with the remaining conditions of probation recommended by the disciplinary board, except that in lieu of requiring petitioner to certify in his first quarterly report to the State Bar that he has read the State Bar Act and Rules of Professional Conduct, we further order that prior to the end of petitioner's actual period of suspension or within one year of imposition of such period of suspension, he pass the Professional Responsibility Examination. (See *Segretti* v. *State Bar* (1976) 15 Cal.3d 878, 891, fn. 8 [126 Cal.Rptr. 793, 544 P.2d 929].) It is also ordered that petitioner comply with rule 955 of the California Rules of Court and perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days respectively after the effective date of this order. This order is effective 30 days after the filing of this opinion.