[S.F. No. 24161. Dec. 11, 1980.]

JOSEPH GIOVANAZZI, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Richard K. Critchlow for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and Gael T. Infande for Respondent.

**OPINION**

**THE COURT.**—Review of recommendation of the State Bar Disciplinary Board that petitioner Joseph Giovanazzi be suspended from the practice of law for three years, that execution of suspension be stayed, and that petitioner be placed on probation on conditions including no actual suspension. We adopt the board's recommendation with the added condition of probation that he be actually suspended from the practice of law for 30 days.[1]

Petitioner, admitted to practice in 1969, is 39 years of age. He has no prior disciplinary record.

Petitoner was charged in the instant proceeding in two separate matters with violating his oath and duties as an attorney (Bus. & Prof. Code, §§ 6103, 6067, 6068) and commission of acts involving moral

---

[1]Recommended probationary conditions require petitioner to (1) report quarterly regarding the status of client trust funds, (2) report within 15 days after entering on a business transaction with a client or acquiring any pecuniary interest adverse to a client, (3) include a client's consent to the transaction in the filed report, (4) answer any inquiries from State Bar representatives regarding compliance with probationary terms, except to the extent prohibited by specific privileges, (5) take and pass the Professional Responsibility Examination, and (6) comply with the State Bar Act and Rules of Professional Conduct.

turpitude and dishonesty (Bus. & Prof. Code, § 6106). He was also charged with wilfully violating the following rules of professional conduct: Misleading the court by false pleading (rule 7-105), misappropriating a client's funds (rule 8-101), and involving a client in business transactions adverse to the client's best interests (rule 5-101). (West Ann. Bus. & Prof. Code, foll. § 6076.)

Petitioner and the board have formally stipulated to facts supporting the charges, to mitigating circumstances and to recommended discipline. Relevant facts disclose two separate incidents of professional misconduct—the Brian Kelly and the Marion Tatum matters.

In the Brian Kelly matter petitioner had represented Kelly in recovering a $750,000 claim for personal injuries. Petitioner's fee was $250,000. Less than a year later, while Kelly was still petitioner's client, petitioner negotiated a $100,000 loan from Kelly for purposes of making an investment. Petitioner did not advise Kelly that he should seek independent legal counsel, that the interest rate for the loan was usurious and could have legal consequences adverse to Kelly, or that Kelly should undertake particular action necessary to perfect Kelly's security interest in property offered by petitioner as collateral for the loan.

Petitioner executed "A Promissory Note and Assignment" in favor of Kelly providing for 24 successive monthly principal payments of $4,166 each and prepaid interest in the amount of $12,500 at the beginning of each year of the two-year note.

The document also provides that petitioner "agrees" to "[s]ecure this promissory note with an assignment" of petitioner's interest in described real property, and to give Kelly "a lien on the income from [petitioner's] law practice" should the assignment of real property be insufficient security. For purposes of finalizing the loan transaction petitioner designated an associate, Eugene Alkana, as his agent and gave Alkana power of attorney. Petitioner negotiated the $100,000 cashier check delivered to him from Kelly through Alkana. Petitioner made the first interest and eight principal payments on the note, and thereafter defaulted.

Kelly commenced a civil action on the note. After petitioner's default was taken for failure to timely file a responsive pleading, he moved to vacate the default and attached to his moving papers a "Proposed De-

murrer to Complaint." He alleged in the demurrer that he was unaware of any agency relationship between himself and Alkana, that he had no knowledge of any powers of attorney executed by him in favor of Alkana, and that he did not ratify any of Alkana's actions.

After these disciplinary proceedings were commenced, petitioner paid the Kelly obligation in full.

In the Marion Tatum matter, petitioner received funds in settlement of clients' claims and withheld the sum of $2,451.85 to cover fees charged by Tatum, an investigator who had furnished services in connection with the claims. The $2,451.85 was deposited in petitioner's "Client's Trust Account." No portion of the $2,451.85 was paid to Tatum nor was any portion of this sum refunded to petitioner's clients. During a three-year period following retention of the Tatum fund, the balance in petitioner's trust account dropped to an amount $344.94 less than the amount he purportedly held in trust for the investigative fee.

The formal stipulation of facts, mitigating circumstances and recommendation has been approved by order of the board, thereby terminating proceedings before the board. (Former rule 25.40, Rules Proc. of State Bar, now rule 407, West Ann. Bus. & Prof. Code, foll. § 6087.) Petitioner has thus admitted the foregoing facts underlying charges against him and has concurred in recommended discipline based in part on stipulated mitigating circumstances as hereinafter appear. He did not seek judicial review until informed that this court might consider imposition of more severe sanctions than recommended. He urges the court to adopt the recommended discipline. Alternatively, if the court deems a more severe discipline be imposed, he requests the cause be remanded to the board for an evidentiary hearing limited to a fuller exposition of factors in mitigation of his misconduct. He does not challenge the accuracy of any fact to which he has stipulated.

This court stated in *Inniss* v. *State Bar* (1978) 20 Cal.3d 552 [143 Cal.Rptr. 408, 573 P.2d 852], that an attorney is bound by *factual recitals* in a stipulation even when the court considers imposition of harsher sanctions than those stipulated to by the attorney and the board. "[T]he stipulated *facts* may not be contradicted; otherwise, the stipulation procedure would serve little or no purpose, requiring a remand for further evidentiary hearings whenever an attorney deems it advisable to challenge factual recitals." (*Id.*, at p. 555.) However, an

exception to the general rule was expressly recognized in *Inniss.* "On the other hand, fundamental fairness seems to require us to relieve an attorney from the *legal conclusions* to which he may have agreed solely because the recommended punishment seemed to him fair and reasonable." (*Ibid.*) The stipulation includes matters best described as legal conclusions as, for instance, it is stipulated that petitioner "may be deemed to have had the responsibilities of a fiduciary to Brian J. Kelly," and that petitioner's conduct "is in violation of Business and Professions Code Section[s] 6067, 6065, and 6103, and Rules 5-101 and 7-105 of the Rules of Professional Conduct." While petitioner does not expressly complain of these and other legal conclusions, we do not deem that he is bound to them under *Inniss.* We hereinafter independently consider the legal effect of the purely factual matters stipulated to, and draw our independent conclusions thereon.

■ Petitioner complains only that he is prejudiced by the finality of the stipulation insofar as it forecloses his right to submit additional mitigating materials relative to discipline. He contends that implicit in the stipulation process are assurances as to the final disposition of the cause in exchange for relinquishment of procedural rights. He states he will be deprived of rights to procedural and administrative due process if he is subjected to harsher than bargained-for discipline without benefit of a hearing.

Petitioner's argument presupposes that the stipulation process—involving not only an agreed factual statement of an attorney's misconduct and other relevant matters, but also a mutually arrived at conclusion as to sanctions warranted by that misconduct—results in a bargained-for commitment. If in a very broad sense that were true and the bargaining parties are each bound to some commitment, it is immediately clear that the only commitment the board can make is to *recommend* the particular discipline. This court has repeatedly held that it is for it and not the board to fix the discipline in any particular case. (See, e.g., *Martin* v. *State Bar* (1978) 20 Cal.3d 717, 723 [144 Cal.Rptr. 214, 575 P.2d 757]; *Lester* v. *State Bar* (1976) 17 Cal.3d 547, 552 [131 Cal.Rptr. 225, 551 P.2d 841]; *Silver* v. *State Bar* (1974) 13 Cal.3d 134, 147 [117 Cal.Rptr. 821, 528 P.2d 1157]; *Fielding* v. *State Bar* (1973) 9 Cal.3d 446, 452 [107 Cal.Rptr. 561, 509 P.2d 193]; *Glickman* v. *State Bar* (1973) 9 Cal.3d 179, 184 [107 Cal.Rptr. 65, 507 P.2d 593]; *Sturr* v. *State Bar* (1959) 52 Cal.2d 125, 127 [338 P.2d 897]; *Burns* v. *State Bar* (1955) 45 Cal.2d 296, 303 [288 P.2d 514].)

Petitioner, as a member of the bar, must be deemed to have entered upon the stipulation with knowledge that this court would exercise an independent judgment, and he does not contend he was unaware.[2]

It further appears that the authorities on which petitioner relies in support of his contention of deprivation of due proces, do not aid him. (See *North Carolina* v. *Alford* (1970) 400 U.S. 25 [27 L.Ed.2d 162, 91 S.Ct. 160]; *People* v. *West* (1970) 3 Cal.3d 595 [91 Cal.Rptr. 385, 477 P.2d 409]; Pen. Code, § 1192.5.) Those cases and statutory law relate to pleas in criminal cases. ■ It is settled that bar proceedings are not criminal in nature. (*Lewis* v. *State Bar* (1973) 9 Cal.3d 704, 713-714 [108 Cal.Rptr. 821, 511 P.2d 1173].) The principal objective in disciplinary proceedings is to protect the public, the courts, and the legal profession from persons unfit to practice, rather than to penalize the individual attorney. (*Black* v. *State Bar* (1972) 7 Cal.3d 676, 688 [103 Cal.Rptr. 288, 499 P.2d 968].) Accordingly, particular procedural safeguards applicable in criminal and civil litigation are not required in disciplinary proceedings to insure a right to due process. (*Emslie* v. *State Bar* (1974) 11 Cal.3d 210, 229 [113 Cal.Rptr. 175, 520 P.2d 991].)

Since *Inniss*, this court has consistently imposed—when warranted— harsher discipline than that recommended on stipulation without remanding the cause for an evidentiary hearing on the issue of mitigation. (See *Olguin* v. *State Bar* (1980) 28 Cal.3d 195 [167 Cal.Rptr. 876, 616 P.2d 858]; *Tenner* v. *State Bar* (1980) 28 Cal.3d 202 [168 Cal.Rptr. 333, 617 P.2d 486].) ■ We conclude petitioner is bound to the stipulated facts including facts asserted in mitigation, and if we deem it necessary to impose harsher punishment than that recommended he is not entitled to an evidentiary hearing.

■ Petitioner's conduct in the Brian Kelly matter violated his oath and duties as an attorney and involved acts of moral turpitude. Because an attorney is a fiduciary to his client, all dealings between them which are beneficial to the attorney must be closely scrutinized for unfairness.

---

[2]Petitioner is in no position to so contend. Before the stipulation was entered into both he and his counsel were delivered copies of this court's opinion in *Inniss* v. *State Bar, supra*, 20 Cal.3d 552. In addition to holding in *Inniss* that an attorney is bound to the factual matters to which he has stipulated, even when the court is to consider harsher sanctions than those recommended by the board, we made it unmistakably clear that more severe punishment than that stipulated to and recommended may be imposed in appropriate cases. (*Id.*, at pp. 556-558.) Petitioner was thus put on notice before signing the stipulation that there could be no commitment to the recommended discipline.

Where an attorney's conduct disregards this duty, severe discipline is warranted. (*Marlowe* v. *State Bar* (1965) 63 Cal.2d 304, 308 [46 Cal. Rptr. 326, 405 P.2d 150] (three months' actual suspension); *Clancy* v. *State Bar* (1969) 71 Cal.2d 140, 152 [77 Cal.Rptr. 675, 454 P.2d 329] (six months' actual suspension).)

Petitioner has additionally misled a court by filing dishonest and inaccurate pleadings in the action commenced by Kelly. The court has denounced such conduct by the offending attorney even in instances where there was no direct evidence of malice, intent to deceive, or hope of personal gain. (See *Pickering* v. *State Bar* (1944) 24 Cal.2d 141, 145 [148 P.2d 1] (one-year actual suspension); *Paine* v. *State Bar* (1939) 14 Cal.2d 150, 153-154 [93 P.2d 103] (six months' actual suspension).)

In mitigation of petitioner's misconduct in the Kelly matter, it is stipulated that petitioner knew or believed at the time that Kelly was experienced in real estate transactions; that Kelly had consulted other attorneys on business matters on a regular basis; that Kelly had attended law school and Kelly's father and a brother were lawyers; that the note and assignment given Kelly adequately protected his interests; that the real property assigned as security had a value "between $75,000.00 and $100,000.00" encumbered by a $32,500 deed of trust. It is also stipulated that petitioner's failure to further perfect Kelly's security interests was due to petitioner's lack of experience in business and real estate matters; that two years after the Kelly transaction petitioner sold real property and took back a note in a transaction structured in the same manner as the Kelly transaction; that petitioner believed he would have the financial ability to repay the Kelly loan within its terms and was justified in such belief based on his reported income for the three-year period immediately preceding the loan; that between the time of the Kelly transaction and the commencement of action by Kelly, petitioner suffered "serious financial problems," the causes of which are stated in the stipulation; that in filing the proposed demurrer to Kelly's complaint petitioner did not intend to deceive the court; that the proposed demurrer was prepared in haste in an attempt to put all allegations of the complaint in issue; and that the Kelly obligation has been paid in full.[3]

---

[3]So far as petitioner has been able to advise us, there are no mitigating circumstances which he would put in evidence on a remand which do not now appear in the stipulation. However, he states he would highlight particular factors in mitigation by adding background and color through third party witnesses whose testimony might be

With respect to the second incident of misconduct petitioner concedes he mismanaged his client's trust account, resulting in a trust account balance $344.95 below an amount withheld from a client and deposited in the trust account to pay an investigative fee to Marion Tatum, and that he had not paid Tatum during the period of the shortage.

■ The mere fact that the balance in an attorney's trust account has fallen below the total of amounts deposited in and purportedly held in trust, supports a conclusion of misappropriation. This is a serious violation of professional ethics likely to undermine the public confidence in the legal profession. (*Greenbaum* v. *State Bar* (1976) 15 Cal.3d 893, 905 [126 Cal.Rptr. 785, 544 P.2d 921]; see *Demain* v. *State Bar* (1970) 3 Cal.3d 381, 387 [90 Cal.Rptr. 420, 475 P.2d 652].)

In mitigation of the Tatum matter it is stipulated that the Tatum claim was in substantial dispute; that the dispute involved not only the amount of the claim but also the respective obligations therefor between petitioner and three other attorneys representing other clients involved in the investigation; that Tatum had commenced a still pending court action against the attorneys; that at all times petitioner had intended "to retain a sufficient balance in his Client Trust Account to cover the investigative fees of Marion Tatum;" that maintenance of the trust account had been delegated to petitioner's support staff, and that the relocation of his law offices after deposit of the Tatum funds in the trust account resulted in the misplacement or loss of trust account records.

■ In arriving at a proper discipline consistent with the purpose of disciplinary proceedings to protect the public from attorneys unfit to practice (see *Schultz* v. *State Bar* (1975) 15 Cal.3d 799, 803 [126 Cal. Rptr. 232, 543 P.2d 600]), we must balance all relevant factors including mitigating circumstances on a case-to-case basis. (See *Bernstein* v. *State Bar* (1972) 6 Cal.3d 909, 919 [101 Cal.Rptr. 369, 495 P.2d 1289], *Codiga* v. *State Bar* (1978) 20 Cal.3d 788, 796 [144 Cal.Rptr. 404, 575 P.2d 1186].) We also attach great weight to the discipline recommended by the board. (*Martin* v. *State Bar, supra*, 20 Cal.3d 717, 723.)

Acknowledging other significant mitigating factors in the Kelly matter, we note that perhaps the most significant of those urged by

more persuasive than his self-serving representation of mitigating factors—the context in which the stipulation is cast.

petitioner is repayment of the obligation to Kelly. However, petitioner did not take this action until notified of the board's impending disciplinary investigation. During the two years preceding payment, petitioner had made no installment payments, notwithstanding an overdue balance of approximately $75,000, and he had asserted a frivolous defense in Kelly's suit when there was a clear obligation to pay. Thus restitution to Kelly is entitled to slight weight as a mitigating factor. (See *Fitzpatrick* v. *State Bar* (1977) 20 Cal.3d 73, 88 [141 Cal.Rptr. 169, 569 P.2d 763].)

We deem on the record before us that petitioner's misappropriation in the Tatum matter was not intentional, and resulted from poor management of his client trust account and careless supervision of his staff. Matters asserted in mitigation establishing that the amount of the Tatum claim was unresolved, cannot excuse the misappropriation of any part of funds held to satisfy the claim when resolved. ■ While "'the good faith of an attorney is a matter to consider in determining whether discipline should be imposed for acts done through ignorance or mistake'" (*Black* v. *State Bar, supra,* 7 Cal.3d 676, 692), we have repeatedly held that trust account deficiencies are attributable to attorneys —not to their employees. (*Id.,* at p. 692; *Vaughn* v. *State Bar* (1972) 6 Cal.3d 847, 857 [100 Cal.Rptr. 713, 494 P.2d 1257].) Gross carelessness and negligence constitute violations of the oath of an attorney to faithfully discharge his duties to the best of his knowledge and ability, and involve moral turpitude as they breach the fiduciary relationship owed to clients. (*Simmons* v. *State Bar* (1970) 2 Cal.3d 719, 729 [87 Cal.Rptr. 368, 470 P.2d 352].)

■ We conclude that the seriousness of petitioner's professional misconduct warrants some period of actual suspension. It is ordered that petitioner be suspended from the practice of law for three years. The execution of such suspension is stayed and petitioner is placed on probation subject to all conditions recommended by the disciplinary board with the additional condition that he be actually suspended for 30 days.

This order is effective 30 days after the filing of this opinion.

**BIRD, C. J.**—I respectfully dissent. I would grant petitioner's request for an evidentiary hearing to augment the stipulated statement of mitigating circumstances. Discipline should be deferred until after such a hearing.

As the majority note, this court has declared that State Bar disciplinary proceedings are not criminal actions. However, this declaration "is

considerably undermined by the repeated concession that they are 'quasi-criminal' proceedings. (*Golden* v. *State Bar* (1931) 213 C. 237, 247, 2 P.2d 325; *Furman* v. *State Bar* (1938) 12 C.2d 212, 229, 83 P.2d 12; *Herrscher* v. *State Bar* (1935) 4 C.2d 399, 403, 421, 49 P.2d 832. . . . The attorney whose professional license is challenged has as much at stake as the defendant in many a criminal prosecution, and should be similarly protected in the *trial of serious charges.*" (1 Witkin Cal. Procedure (2d ed. 1970) Attorneys, § 252, at p. 260.)[1]

The right to practice one's profession, which is at stake in disciplinary proceedings, has long been deemed sufficiently fundamental to surround it with a panoply of procedural safeguards. (See *Emslie* v. *State Bar* (1974) 11 Cal.3d 210, 226, 229 [113 Cal.Rptr. 175, 520 P.2d 991]; *Endler* v. *Schutzbank* (1968) 68 Cal.2d 162, 169-173 [65 Cal.Rptr. 297, 436 P.2d 297]; *Brecheen* v. *Riley* (1921) 187 Cal. 121, 124-125 [200 P. 1042].) Although this court is not compelled to extend the procedural rules governing civil or criminal litigation to these proceedings, "such rules have been invoked by the courts when necessary to insure administrative due process. [Citation.] . . . [¶] The question whether a particular rule of the civil or criminal law, not otherwise provided for by statute or categorically established by case law, should be applied in State Bar disciplinary matters to assure administrative due process, must be determined upon the facts presented in a particular case." (*Emslie* v. *State Bar, supra,* 11 Cal.3d at p. 226.)[2]

Contrary to the majority's position, petitioner's request is not governed by the case of *Inniss* v. *State Bar* (1978) 20 Cal.3d 552 [143 Cal.Rptr. 408, 573 P.2d 852]. In *Inniss*, this court remarked that when it is considering an increase in the recommended discipline, it "may relieve the attorney from the binding effect of the stipulation. Ordinarily, however, the stipulated *facts* may not be *contradicted. . . .*" (*Id.*, at

---

[1]See *In re Ruffalo* (1968) 390 U.S. 544, 551 [20 L.Ed.2d 117, 122, 88 S.Ct. 1222], which held that disbarment proceedings were "adversary proceedings of a quasi-criminal nature. [Citation.]" "Disbarment, designed to protect the public, is a punishment or penalty imposed on the lawyer. [Citations.]," the court reasoned, and the attorney "is accordingly entitled to procedural due process . . . ." (*Id.*, at p. 550 [20 L.Ed.2d at p. 122].)

[2]Petitioner invokes the analogy of the statutory provisions governing the criminal plea bargaining process. He argues that he has surrendered his rights to various procedural protections and admitted misconduct in return for the State Bar's recommendation of a particular discipline. When a trial court declines to approve a plea bargain which a criminal defendant has negotiated, petitioner notes, the plea is deemed withdrawn and may not be received in evidence in any other proceeding. (Pen. Code, § 1192.5.)

p. 555, second italics added.) Thus, *Inniss* determined only that an attorney who had entered into a stipulation as to acts or omissions which required discipline could not challenge those admissions if this court chose to consider a more severe discipline. Petitioner mounts no such challenge here. He merely requests an opportunity to make available to this court additional testimonial and documentary evidence of circumstances in mitigation of his conduct.

Specifically, petitioner requests an evidentiary hearing to enable him to substantiate and detail his stipulated representations regarding Kelly's consultation with other counsel, Kelly's experience in real estate and business matters, the breakdown in communications between himself and Kelly which led to the filing of a facially inaccurate demurrer, the agreement between himself and other attorneys to pay the costs of an investigator's bills on a pro rata basis, that the pro rata share he owed was less than the amount in the trust account, and that his clients had authorized him to withhold payment to the investigator. Moreover, petitioner indicates that he would present this evidence at a hearing to set forth his condition, his cooperation and candor with the State Bar, and his reputation in the legal community.

The majority's observation that petitioner has failed to advise this court of any "mitigating circumstances which he would put in evidence on a remand which do not now appear in the stipulation" (maj. opn., *ante*, at p. 473, fn. 3) mischaracterizes petitioner's request. At oral argument, petitioner explained that he and his counsel met with a State Bar examiner at a "pretrial settlement conference." They negotiated (1) a recommended discipline which appeared reasonable to both parties, and (2) a mutually acceptable recitation of the acts and omissions which warranted discipline. Only some weeks later, petitioner explained, did the State Bar examiner, who was familiar with his case, prepare a statement of mitigating circumstances and mail it to petitioner and his counsel for approval.

This statement was not the subject of give-and-take negotiations as were the matters pertaining to discipline and the factual basis therefor. The statement consisted basically of a summary of petitioner's arguments as to why he should be afforded lenient treatment. Other than some documents which were in his possession, petitioner did not present any evidence to support his assertions. Nor, apparently, was he asked to do so. Thus, in contrast to the factual admissions in the stipulation, which are presented straightforwardly as facts, the mitigating circumstances in the stipulation are preceded by the qualifying phrase

"Respondent [attorney] represents that. . . ." In consequence, the State Bar has not, by the literal terms of the stipulation, agreed to the truth of anything other than the fact that petitioner offered various unsubstantiated claims in mitigation of his misconduct.

Petitioner argues convincingly that his uncorroborated and necessarily self-serving representations could be made considerably more persuasive if they were buttressed by the testimony of less partial witnesses or by documentary evidence in the possession of others. As any advocate knows, the source of a piece of information is often a significant aspect of that information's probative and persuasive force. Moreover, petitioner's proposed evidence regarding his intent, his cooperation with the State Bar, and his professional reputation is not now in the record before this court even though it is relevant to any determination of appropriate discipline.

It is true that petitioner could have insisted on a formal hearing before he entered into the stipulation and could have presented the evidence there which he now seeks to add to the record.[3] However, *Inniss* v. *State Bar, supra,* 20 Cal.3d 552, did *not* put petitioner on notice that his failure to insist on an evidentiary hearing on mitigation would preclude him from obtaining such a hearing at a later date. Indeed, petitioner indicates that he believed he would have an opportunity for such a hearing if this court contemplated rejecting the disciplinary recommendation.

Moreover, it was not apparent that a fuller exposition of mitigating circumstances would have been necessary or useful at that time because, as petitioner noted in oral argument, "There was nobody to persuade."

The examiner, who had negotiated the stipulation, obviously regarded the recommended discipline as appropriate. If the referee or hearing panel, who must approve a stipulation before it is filed with this court, were to disagree with the recommended discipline, rule 408, subdivision (b) of the Rules of Procedure of the State Bar ensures that in such a situation "the parties shall be relieved of all effects of the stipulation. . . ." Whatever procedural rights petitioner might have surrender-

---

[3]It is unclear whether the State Bar Disciplinary Board would have agreed to stipulate as to the facts and recommended discipline and at the same time hold an evidentiary hearing on mitigating factors. Indeed, rule 406, subdivision (iv) of the Rules of Procedure of the State Bar requires that a proposed stipulation as to facts and discipline include a "statement of mitigating circumstances, if any. . . ."

ed by entering the stipulation would thus be restored to him. Only in the rather unlikely event that this court were to think that the disciplinary recommendation might be too lenient would there be a need to develop a full and persuasive record of the factors in mitigation.

Although this court bears the ultimate responsibility for determining the degree of discipline to impose, the recommendations of the State Bar Disciplinary Board are accorded great weight (*In re Duggan* (1976) 17 Cal.3d 416, 423 [130 Cal.Rptr. 715, 551 P.2d 19]), and will ordinarily be followed by this court. (*Moura* v. *State Bar* (1941) 18 Cal.2d 31, 32 [112 P.2d 629].) In the usual case, a summary of the factors in mitigation will provide an adequate record to enable this court to determine whether to follow the board's recommendation. However, if in reviewing that record, this court decides that the attorney's misconduct may warrant a harsher sanction, it may then become appropriate to provide this court with a more thorough record of the mitigating circumstances. Indeed, the economies made possible by the stipulation process could be lost if every attorney accused of misconduct felt impelled to insist on a formal evidentiary hearing on mitigating factors in anticipation of the prospect that this court might later decide to consider an increase in discipline.[4]

This court should have a full record before it when assessing the appropriate discipline to dispense. It is important as well for purposes of his rehabilitation that the disciplined attorney feel that he has been afforded his full and fair day in court. Mindful of the "concepts of fundamental due process" (*Emslie* v. *State Bar, supra,* 11 Cal.3d at p. 228) which govern this court's treatment of State Bar disciplinary proceedings, in fairness to the attorney here I would remand for an evidentiary hearing on mitigating circumstances before imposing any discipline.

Tobriner, J., and Newman, J., concurred.

---

[4]Of course, if petitioner had elected to proceed by way of formal hearings rather than by stipulation, he would be under a duty to present to the board any and all evidence he deemed favorable to himself. (*Coviello* v. *State Bar* (1955) 45 Cal.2d 57, 65 [286 P.2d 357].)