[L.A. No. 31646. Nov. 17, 1983.]

In re FRANK C. MORALES on Suspension.

2

COUNSEL

Charles V. Weedman for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and Gerald Markle for Respondent.

OPINION

**THE COURT.**—Petitioner Frank C. Morales was admitted to the practice of law in California on June 10, 1959. In March 1979, he was privately reproved for gross negligence in failing to keep complete records of clients' trust funds, and failing to maintain sufficient funds in one such account to honor a check issued for medical services rendered to a client. The present disciplinary proceedings result from his conviction of 27 misdemeanor offenses involving the failure to withhold or pay certain payroll taxes and unemployment insurance contributions. (See Rev. & Tax. Code, § 19409; Unemp. Ins. Code, §§ 2108, 2110, 2110.5.) The State Bar recommends that petitioner be suspended from the practice of law for a period of 18 months, that execution of the suspension order be stayed, and that petitioner be placed on probation for 18 months, upon specified conditions, including compliance with the statutes he violated.

Petitioner contends that he is not guilty of moral turpitude, that the State Bar's hearing panel was not legally constituted, and that the panel's findings are vague and ambiguous. We conclude that the State Bar's findings are properly supported and warrant the relatively minor discipline recommended, and that even if petitioner's procedural challenges have merit, he was not prejudiced by the asserted errors.

FACTS

Petitioner was an officer and employee of the law corporation of Mohi, Morales and Glassman until December 31, 1975, when Mohi dissolved the corporation. Thereafter, petitioner hired several employees (1) to carry on and wind up the affairs of the former firm, and (2) to conduct a legal practice in a new corporate form with himself as the sole officer.

Petitioner incurred payroll expenses while winding up the former corporation, and any revenues that were received were placed in trust pending litigation with Mohi over the dissolution. Petitioner was unable to withdraw funds from the trust to pay his expenses without Mohi's approval, and Mohi

declined to subsidize petitioner's new law firm or the winding up of their old firm. Initially, petitioner borrowed from banks the funds needed for expenses, including wages; thereafter he was able to generate some income from his new practice. He eventually encountered difficulty, however, in paying all of his obligations and, accordingly, failed to pay the requisite unemployment contributions and payroll taxes, paying his employees only their net salary for five quarters in the years 1976 and 1977.

Petitioner was charged with, and convicted of, violating the following statutes: (1) Eight counts of Revenue and Taxation Code section 19409 (failure to withhold or pay withheld taxes); (2) seven counts of Unemployment Insurance Code section 2108 (wilful failure or refusal to make contributions); (3) six counts of Unemployment Insurance Code section 2110 (withholding deductions and wilfully failing to pay such deductions); and (4) six counts of Unemployment Insurance Code section 2110.5 (wilfully failing to withhold deductions in trust). Petitioner's conviction was affirmed on appeal.

On March 20, 1980, we referred this matter to the State Bar to determine whether the "facts and circumstances surrounding the commission of the offenses . . . of which Frank Morales was convicted, involved moral turpitude or other misconduct warranting discipline." (See Bus. & Prof. Code, §§ 6101, 6102.)

The hearing panel, which consisted of one lawyer and one nonlawyer, concluded that the "offenses of which petitioner was convicted involve moral turpitude." On May 13, 1982, the review department modified the findings of the hearing panel, determining that the facts and circumstances surrounding petitioner's conviction involved "other misconduct warranting discipline" rather than "moral turpitude." The review department then adopted the hearing panel's recommendation that petitioner be suspended for 18 months, with suspension stayed upon specified conditions of probation.

### DISCUSSION

### 1. *Moral Turpitude*

Petitioner first argues that he is not guilty of "moral turpitude." (He does not, however, deny guilt of "other misconduct warranting discipline.") He observes that no misuse, commingling or misappropriation of funds occurred, and he argues that his obligation to pay taxes was only a "vicarious" one because the two law corporations, not petitioner, were the defaulting taxpayers here. Petitioner notes that he never concealed or disputed the tax

obligations and that he even facilitated levies on the dissolved corporation's trust fund to help pay the taxes.

We considered a similar situation in *In re Rohan* (1978) 21 Cal.3d 195 [145 Cal.Rptr. 855, 578 P.2d 102], involving an attorney convicted for wilfully failing to file his own federal income tax return. There the State Bar had found that although no moral turpitude occurred, the commission of the offense nevertheless involved "other misconduct warranting discipline." (*Id.*, at p. 198.) The State Bar also had found that the attorney " 'at no time misrepresented the facts or falsified any of the records, . . .' " and that there was no evidence that he sought to achieve any personal financial gain by not filing his tax returns. (*Id.*, at p. 201.) Our decision (consisting of three separate opinions) unanimously agreed that discipline was justified and suspended the attorney for two years, with suspension stayed upon specified conditions of probation, including sixty days' actual suspension. (*Id.*, at p. 204.)

The lead opinion (Clark, J.; Richardson, J., concurring) concluded that a violation of the law which does not involve moral turpitude is still ground for discipline if it "demeans the integrity of the legal profession and constitutes a breach of the attorney's responsibility to society." (*Ibid.*) A concurring opinion (Tobriner, Acting C. J.; Mosk, J., concurring) would have retained the requirement of moral turpitude if construed to mean conduct which indicates unfitness to practice, rather than limited to " 'baseness, vileness or depravity.' " (*Id.*, at p. 206.) The concurring opinion agreed, however, that discipline was warranted because "The maintenance of clear and accurate financial records and preparation and filing of timely tax returns closely parallel the duties of a practicing attorney. Petitioner's carelessness in these matters suggests that, for the protection of clients, his practice should be subject to probationary supervision by the State Bar." (*Ibid.*)

A second concurring opinion (Sullivan, J.; Wright, J., concurring) also agreed that discipline was justified, but disagreed with the lead opinion's formulation of the bases for discipline and, evidently, would have retained the requirement of moral turpitude.

As indicated above, in the present case the review department found that petitioner should be disciplined, not for acts of moral turpitude, but for other misconduct warranting discipline. We observe, however, that under all three opinions in *Rohan,* the wilful failure to file income tax returns was held sufficient to justify imposition of two years' suspension, stayed, with sixty days' actual suspension, whether that conclusion was based on a finding of moral turpitude or otherwise. We conclude that petition-

er's failure to meet similar tax obligations here fully warrants the considerably less onerous discipline recommended by the State Bar.

Petitioner, having paid his employees only their "net" wages, appears to have misused funds held in trust for those employees. Petitioner had the duty, as an employer and a trustee, to withhold the proper payroll deductions and to pay them to the state. (Unemp. Ins. Code, §§ 986, 2110.5.) The monies withheld belonged to the employees, not to petitioner or his corporation. By failing to maintain the withheld funds in trust for his employees, petitioner in essence commingled those funds with his own and misappropriated them for his own benefit. We find no justification for petitioner's misconduct. His reasons for failing to pay the taxes differ little in kind or degree from those confronting many a harried taxpayer, who would not be relieved thereby from such obligation.

Petitioner made an illegal business decision concerning the allocation of available funds between competing obligations. It is reasonably foreseeable that petitioner's legal advice could be solicited by clients in similar circumstances, and we have grave doubts whether the advice he would offer would be sound in view of petitioner's apparent failure even now to recognize that what he did was not justified simply because no "excess funds" existed with which to pay the state.

Further, petitioner's decision to allocate his available funds to other creditors, rather than to the state, was clearly wilful. ■ We have held that the term "wilful" does not require evil intent, but it implies the person knows what he is doing, intends to do what he is doing, and is a free agent. (*In re Trombley* (1948) 31 Cal.2d 801, 807 [193 Cal.Rptr. 734].) Here, petitioner hired the staff, knew his tax obligations, borrowed money and earned fees to support his practice, but decided to pay other creditors instead of the state.

Petitioner's argument that his obligation to pay taxes was "vicarious" because the law corporations were the actual employers lacks merit. His misdemeanor convictions established that petitioner had breached his duty to pay the taxes in question. The use of a corporate shell did not relieve him from responsibility for his omissions.

Petitioner has not met his burden of demonstrating that the State Bar's findings or conclusions are erroneous or unlawful. (*Lee* v. *State Bar* (1970) 2 Cal.3d 927, 939 [88 Cal.Rptr. 361, 472 P.2d 449].)

### 2. *Composition of the Hearing Panel*

■ Without citing authority for the proposition, petitioner next argues that he was denied due process because the hearing panel consisted of only

one lawyer and one nonlawyer, in violation of the State Bar's own Rules of Procedure. (One of the three designated panel members who was a lawyer was absent at the time of the proceedings and the chairman elected to proceed without him.)

Rule 558 of the Rules of Procedure provides that, apart from certain inapplicable exceptions, a panel shall be composed of three referees, only one of whom may be a nonlawyer. Rule 108 states: "When action is to be taken by a panel or department composed of more than one member, a majority of the members constitutes a quorum." And, rule 2.19 defines "member" as a member of the State Bar. Petitioner argues that the rules of the State Bar were not followed in his case because the hearing panel which made the initial findings and recommendation was not composed of at least two lawyers.

Petitioner's argument is not persuasive. His suggestion that "a majority of the members" required for a quorum under rule 108 means "members of the State Bar" rather than "members of the panel" is unreasonable, particularly in the context of a three-member hearing panel required by rule 558 to have only two members who are lawyers. Not only is a "majority of two" an inherently confusing, if not meaningless, concept, but the implication of such a construction of the rules that only a quorum of *lawyers* is qualified to act on behalf of a hearing panel seems unsupportable. In the absence of any regulatory distinction in the status or qualifications of lawyer and nonlawyer members of such a panel, we cannot so distinguish their roles or capacity to act. The majority of members required for a quorum under these rules is a majority of the members of a duly constituted panel, whether they are lawyers or not.

But even if petitioner was correct, the record fails to indicate that his rights were infringed in any way by the irregularity, given the subsequent review accorded him. The panel's decision was reviewed independently by the State Bar's regularly constituted review department, and it is the recommendation of the latter department which represents the final action of the State Bar which is reviewed here. (See rule 452; *In re Petty* (1981) 29 Cal.3d 356, 359 [173 Cal.Rptr. 461, 627 P.2d 191].) Ultimately, of course, we exercise our independent judgment on the evidence and pass on its weight and sufficiency. (*Lee* v. *State Bar, supra,* 2 Cal.3d 927, 939.) Accordingly, petitioner's challenge to the procedure employed in his case lacks merit for the additional reason that he has failed to demonstrate any prejudice as a result of that procedure. (*Mrakich* v. *State Bar* (1973) 8 Cal.3d 896, 906 [106 Cal.Rptr. 497, 506 P.2d 633].)

### 3. Sufficiency of Findings

 Petitioner next inexplicably attacks the hearing panel's findings regarding the existence of "moral turpitude" as being vague and ambiguous. We note that we had referred the case to the State Bar to determine whether the facts and circumstances surrounding the offenses of which petitioner was convicted constitute moral turpitude or other misconduct warranting discipline. The panel adopted the opinion of the appellate department in the criminal proceeding as "accurately describing the facts and circumstances surrounding the commission of the offenses," and then summarily concluded that the offenses (rather than the underlying facts and circumstances) involved moral turpitude. Petitioner observes that the opinion in the appellate criminal proceedings was silent regarding the issues of moral turpitude or fitness to practice, and, therefore, argues that the hearing panel's basing of its conclusion on that opinion alone is ambiguous.

What petitioner fails to acknowledge, however, is that the finding of the hearing panel to which he objects was eliminated when the review department, after independent review of the panel's decision, deleted the finding of moral turpitude and substituted therefor a finding that petitioner's conduct constituted "other misconduct warranting discipline." Any ambiguity in the hearing panel's earlier finding departed with that finding; and petitioner neither disputes the review department's substitute finding of "other misconduct warranting discipline" nor points to any ambiguity related thereto. Furthermore, we have reviewed the facts and circumstances of the case independently, and conclude that the review department's finding is correct in this regard. Accordingly, petitioner suffered no prejudice from the asserted ambiguity in the hearing panel's findings. (*Mrakich, supra,* 8 Cal.3d at p. 906.)

 For the foregoing reasons, it is ordered that Frank C. Morales be suspended from the practice of law in this state for a period of 18 months, that execution of such suspension be stayed and that he be placed on probation for a period of 18 months on the following conditions: (1) that he take and pass the Professional Responsibility Examination administered by the National Conference of Bar Examiners within one year of the effective date of this order; and (2) that he comply with the conditions of probation numbered 1, 2, 3 and 4 recommended by the State Bar Court in its report in this matter dated June 16, 1982. This order shall be effective 30 days after the filing of this opinion.

**BIRD, C. J.**—I concur in the majority's conclusion that the discipline recommended by the State Bar, supplemented by a requirement of restitution,

is appropriate. However, I would specify the nature of the misconduct which subjects an attorney to discipline.

As the majority concede, this court has not resolved the legal question as to what conduct short of moral turpitude constitutes grounds for discipline. (Maj. opn., *ante,* at p. 5; see *In re Rohan* (1978) 21 Cal.3d 195 [145 Cal.Rptr. 855, 578 P.2d 102].) The six judges who participated in *Rohan* wrote three opinions. Each opinion proposed a different standard of attorney misconduct which would warrant discipline. Each proposed standard had the support of two justices. No one standard commanded a majority, or even a plurality, of this court.

This case presents the precise question which was left unanswered in *Rohan,* and we should take this opportunity to clarify the type of misconduct which warrants discipline. Members of the State Bar must be given a meaningful definition of what misconduct will warrant discipline.

In *In re Fahey* (1973) 8 Cal.3d 842 [106 Cal.Rptr. 313, 505 P.2d 1369, 63 A.L.R.3d 465], this court unanimously determined that an attorney should be "subject to discipline only if he has committed a crime involving moral turpitude (Bus. & Prof. Code, §§ 6101-6102) or an act involving moral turpitude, dishonesty, or corruption (Bus. & Prof. Code, § 6106)." (*Id.,* at p. 849.) In my view, this court should reaffirm the standard unanimously adopted in *Fahey.*

I find the court's explanation in *Fahey* for its formulation of the moral turpitude standard compelling: "Offenses that do not involve moral turpitude or affect professional performance should not be a basis for professional discipline simply because they fall short of the highest standards of professional ethics or may in some way impair the public image of the profession. Otherwise the imposition of discipline may tend to be influenced by the degree to which the offense has become known to the public. [Citation.] Our standard of moral turpitude depends not on popular impression but on the violator's own motivation as it relates to his moral fitness to practice law. [Citations.]" (*Fahey, supra,* 8 Cal.3d at p. 853, fn. omitted.)

I concur in the imposition of the recommended discipline in this case because petitioner's misconduct involved moral turpitude. Each of the 27 crimes of which petitioner was convicted involved his failure to pay taxes and unemployment insurance contributions with funds withheld from employee paychecks for that purpose. Petitioner committed these crimes without the knowledge or the consent of his employees. This wilful and dishonest misconduct which prejudiced the rights of his employees meets the moral turpitude standard defined in *Fahey.*

The purpose of imposing discipline is not to punish attorneys but "to afford protection to the public, maintain the integrity of the legal profession, maintain high professional standards for attorneys and preserve public confidence in the legal profession." (*Hamilton* v. *State Bar* (1979) 23 Cal.3d 868, 879 [153 Cal.Rptr. 602, 591 P.2d 1254]; see also *Bradpiece* v. *State Bar* (1974) 10 Cal.3d 742, 748 [111 Cal.Rptr. 905, 518 P.2d 337]; *Clancy* v. *State Bar* (1969) 71 Cal.2d 140, 151 [77 Cal.Rptr. 657, 454 P.2d 329].) The moral turpitude standard is the most appropriate standard for accomplishing that goal.

Grodin, J., concurred.