[L.A. NO. 32329. Mar. 31, 1988.]

FRANK C. MORALES, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Frank C. Morales, in pro. per., for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., Richard J. Zanassi and Lawrence C. Yee for Respondent.

OPINION

THE COURT—In this proceeding we review the recommendation of the Review Department of the State Bar Court, one member abstaining, that Attorney Frank C. Morales be disbarred as a result of two incidents of misconduct, one involving breach of fiduciary duties in withdrawal of $23,343.10 from a pension plan account and the other involving misappropriation of a check for $3,000. We accord the recommendation of the review department great weight. As petitioner's objections to the procedures followed below, to the sufficiency of the evidence, and to the use of the new standards for attorney discipline appear meritless, we follow the State Bar's recommendation in this case.

FACTS

Petitioner was admitted to the practice of law in California on June 10, 1959. In law school he had met Gary Mohi with whom he subsequently

practiced law, and on or about October 29, 1973, the professional law corporation of Mohi, Morales & Glasman was formed. About a year later, on October 31, 1974, the firm established a pension plan approved by the Internal Revenue Service as an ERISA[1] plan. Mohi, Morales & Glasman dissolved under very acrimonious circumstances on December 31, 1975.

*Prior Discipline*

Petitioner's subsequent discipline by the State Bar has been related either directly to the firm's breakup or indirectly to the financial crisis that came in its wake. In March 1979 he was privately reproved for gross negligence in failing to keep complete records of client trust funds and failing to maintain sufficient funds in one such account to cover a check for medical services to a client. The relevant misconduct occurred in July and August of 1977. He blamed his misconduct on confusion during the dissolution of the firm and on a succession of inexperienced bookkeepers and asserted that an experienced accountant was now maintaining his books.

In November 1983 he was suspended for 18 months, execution of suspension was stayed, and he was placed on probation for 18 months as a result of his conviction of 27 misdemeanor offenses involving failure to withhold or pay certain payroll taxes and unemployment insurance contributions in 1976 and 1977. (See *In re Morales* (1983) 35 Cal.3d 1 [196 Cal.Rptr. 353, 671 P.2d 857].) In mitigation petitioner cited financial difficulties in setting up a new firm and obtaining, from the old firm, funds to which he felt entitled.

In the present case we consider conduct from 1976 to early 1978 involving the Mohi, Morales & Glasman pension fund and a check made out to Mohi and Glasman but deposited and used by petitioner. Again petitioner cites the bitter breakup of the law firm, blames unnamed employees, and, as he did in *Morales, supra,* 35 Cal.3d 1, attacks the State Bar proceedings against him. At some point petitioner must take responsibility for his misconduct even though the circumstances he faced may have been difficult. This case, involving misappropriation of funds and lack of candor with the State Bar and this court, is that point.

*Pension Fund for Mohi, Morales and Glasman*

On dissolution of Mohi, Morales & Glasman, the pension fund of which petitioner was a fiduciary, officer, and trustee and which was maintained at Los Angeles National Bank, was frozen. Petitioner acknowledged in a

---

[1] Employee Retirement Income Security Act of 1974 (29 U.S.C. § 1001 et seq.).

December 31, 1975, letter his understanding with the bank's attorney and president that funds would not be disbursed without written approval of both petitioner and Mohi. This was confirmed by letters to both Mohi and petitioner from the bank's attorney with copies to the bank's president on January 2, 1976.

In January 1977, however, the bank informed petitioner he was in default on a personal loan. Petitioner's response was to try to modify his prior understanding with regard to the Mohi, Morales & Glasman pension account by authorizing withdrawal of $23,343.10 from that account and deposit of the sum in another account from which the loan could be satisfied. He indicated he expected no "repercussions" from this action as he felt he was simply withdrawing his "unquestioned one-half" interest in the fund. In any event, he formally promised to hold the bank harmless for any liability from withdrawal of these funds. The withdrawal was made in February 1977 and the funds used to satisfy petitioner's personal loan.

Mohi learned of the unauthorized withdrawal in April 1977, reminded the bank of his understanding that two signatures were required for withdrawal, and demanded that the bank restore the money to the pension account. The bank refused and suit followed. Mohi obtained summary judgment against petitioner on February 7, 1978, in federal district court.[2] (*Mohi v. Morales* (C.D. Cal.) Civ. No. 77-1688-HP.) Additionally, both the bank and petitioner were sued successfully in state court.[3]

*Check to Mohi and Glasman*

One of the cases retained by Mohi and Glasman after the breakup of the old firm was a workers' compensation matter involving Eugene Tyler. Mohi testified that petitioner had not been involved in that case. Glasman had, and Mohi and Glasman obtained an award for Tyler and were to receive $3,000 in attorney fees. A check for $3,000 payable to Mohi and Glasman and referencing the Tyler case was by error sent to petitioner's address.

According to the declaration of a United California Bank (UCB) employee, petitioner placed on the back of the check the stamped endorsement of

---

[2] Bank was also sued in federal court but the matter was dismissed for lack of subject matter jurisdiction.

[3] We may take judicial notice of the September 29, 1983, judgment in Mohi et al. v. Los Angeles National Bank et al. (Super. Ct. L.A. County No. C-259705) referred to by counsel for the State Bar both at the State Bar hearing and at oral argument in this case. It reflects judgment in favor of Mohi and against Los Angeles National Bank in the sum of $200,000. Judgment was also awarded against Morales on a cross-complaint by the bank. Mohi testified that only a part of the pension fund money was ever recovered from petitioner. The pension fund was fully restored, however, as a result of the bank's payment of judgment.

Mohi, Morales & Glasman and deposited it on May 16, 1978.[4] Thereafter petitioner wrote several checks on the account which by December 1978 had a balance of $35.03.

Mohi learned of the disposition of this check, and on December 28, 1978, swore out an affidavit of forged endorsement which was presented to UCB in January 1979. UCB thereafter reimbursed Mohi and Glasman and made unsuccessful efforts to recover the $3,000 from petitioner.

## DISCUSSION

*Sufficiency of the Evidence*

■ We address first petitioner's contention that evidence before the State Bar was insufficient to permit the referee[5] to determine that he breached his fiduciary duties in withdrawing $23,343.10 from the pension fund account and had misappropriated to his own use[6] the $3,000 check to Mohi and Glasman in violation of Business and Professions Code section 6106.[7] Petitioner complains no evidence was presented as to the details of the pension plan and particularly his rights on its premature termination. He insists that the allegation that he breached a fiduciary duty in withdrawing money from the plan is unsupported.

As to the $3,000 check, he maintains here as he did below[8] that there was no evidence he knew of the arrival of the check, its "misendorsement" by "some employee" of Mohi, Morales & Glasman, or its negotiation. He portrays the incident as a simple mistake by some temporary employee in the course of winding up the complex affairs of the old law firm.

---

[4] Petitioner had set up this UCB account in the name of Mohi, Morales & Glasman on January 28, 1976, almost a month after dissolution of the firm, representing that the firm was an ongoing and qualified corporation and that he was empowered to open the account. He made himself the sole signatory on the account.

[5] The State Bar hearing was before a single referee. (Rule 558, Rules Proc. of State Bar.)

[6] Petitioner contends there was no evidence the check was "forged." While the document Mohi filed with the bank was called an "Affidavit of Payee (Forged Endorsement)," the nature of the charges against petitioner in this matter clearly involved misappropriation, not a criminal charge of forgery.

[7] Section 6106 provides: "The commission of any act involving moral turpitude, dishonesty or corruption, whether the act is committed in the course of his relations as an attorney or otherwise, and whether the act is a felony or misdemeanor or not, constitutes a cause for disbarment or suspension. [¶] If the act constitutes a felony or misdemeanor, conviction thereof in a criminal proceeding is not a condition precedent to disbarment or suspension from practice therefor."

[8] While petitioner did not personally appear at the State Bar hearing and walked out of his review department hearing, he did submit to the State Bar a declaration, a copy of which he attaches to his petition for writ of review here, making numerous assertions as to the facts of the pension fund and misdirected check incidents. The State Bar considered his declaration to the extent it related to his request for review. (Cf. rule 450, Rules Proc. of State Bar.)

Petitioner also suggests that both the pension fund incident and the check incident were promptly and amicably remedied by the banks involved. Indeed he claims it was Los Angeles National Bank that insisted his personal loan be paid from the pension fund also on deposit there. It was the bank's attorneys, he contends, who rendered a legal opinion that he could withdraw funds with the safeguard that if he was not ultimately entitled to withdraw the money unilaterally, he would remain obligated on the note and the bank would restore the money to the pension fund.

■ While we independently examine the record in State Bar proceedings and determine the weight and sufficiency of the evidence supporting a recommendation of discipline, petitioner bears the burden of showing that the findings of the State Bar are not supported by the evidence. (*Arden* v. *State Bar* (1987) 43 Cal.3d 713, 724 [239 Cal.Rptr. 68, 739 P.2d 1236]; *Smith* v. *State Bar* (1985) 38 Cal.3d 525, 538 [213 Cal.Rptr. 236, 698 P.2d 139]; *Trousil* v. *State Bar* (1985) 38 Cal.3d 337, 341 [211 Cal.Rptr. 525, 695 P.2d 1066].) ■ He has not met his burden in this case. To the extent he complains that insufficient detail was presented as to the terms of the pension plan and that Mohi's testimony did not reflect sufficient personal knowledge thereof, he raises evidentiary concerns he waived by absenting himself from the hearing. (See rule 555(e), Rules Proc. of State Bar.)

Breach of fiduciary duty as to the pension fund is supported not only by the testimony of Mohi but also by exhibits including the findings of fact and conclusions of law and the summary judgment of the federal district court in Mohi v. Morales, supra, Civ. No. 77-1688-HP, finding that pension funds had been converted to petitioner's own use and removing him as a fiduciary because of it.[9] (Cf. *Rosenthal* v. *State Bar* (1987) 43 Cal.3d 612, 634 [238 Cal.Rptr. 377, 738 P.2d 723].)

■ Even outside the attorney-client context, an attorney's breach of fiduciary duties owed to another warrants discipline. (*Galardi* v. *State Bar* (1987) 43 Cal.3d 683, 691 [238 Cal.Rptr. 774, 739 P.2d 134]; *Worth* v. *State Bar* (1976) 17 Cal.3d 337, 341 [130 Cal.Rptr. 712, 551 P.2d 16]; *Crooks* v. *State Bar* (1970) 3 Cal.3d 346, 355 [90 Cal.Rptr. 600, 475 P.2d 872].) ■ It is clear that knowing he was a trustee of the pension fund account and knowing two signatures were required to release any sum, he induced the bank to release $23,343.10 on his signature alone. His claim of entitlement to the funds may be relevant to defending against a criminal charge, but it does not mitigate the obvious breach of fiduciary duty.

[9] The federal district court found petitioner breached his fiduciary duties under sections 406, subdivision (a)(1)(B),(D) and subdivision (b) of ERISA by engaging in a loan or other transfer between the pension fund and a real party in interest and by dealing with assets of the fund for his own account. (See 29 U.S.C. § 1106(a)(1)(B),(D) & (b).)

As for the $3,000 check, petitioner's factual assertions are contradicted by the declaration of the UCB employee as to his misrepresentations in setting up an account for a defunct corporation he represented to be ongoing and as to his personally endorsing and negotiating the check for fees to which he was not even arguably entitled. ■ Misappropriation of funds is a serious offense involving moral turpitude. (*Alberton* v. *State Bar* (1984) 37 Cal.3d 1, 15 [206 Cal.Rptr. 373, 686 P.2d 1177]; *Chefsky* v. *State Bar* (1984) 36 Cal.3d 116, 124 [202 Cal.Rptr. 349, 680 P.2d 82]; cf. *Crane* v. *State Bar* (1981) 30 Cal.3d 117, 122-124 [177 Cal.Rptr. 670, 635 P.2d 163].)

■ As for petitioner's contentions that essentially no harm was done as the Los Angeles National Bank and UCB restored the funds he had taken, we have stated that actual loss or injury is not a prerequisite to discipline for fraudulent or deceitful acts. (*Allen* v. *State Bar* (1977) 20 Cal.3d 172, 178 [141 Cal.Rptr. 808, 570 P.2d 1226].) ■ Certainly Mohi and his new firm were at best inconvenienced in the matter of the $3,000 check and costly litigation was required to recover the pension funds. Petitioner's suggestion of a smooth, almost amicable resolution of that matter flies in the face of reality.

In sum, we find the conclusions of the State Bar that petitioner breached his fiduciary duties as to the pension account and misappropriated the $3,000 check thereby committing acts of moral turpitude to be amply supported by the evidence.

*Procedural Issues*

Petitioner raises four procedural objections to proceedings before the State Bar. He contends: (1) he was given inadequate notice of the hearing and was not given an opportunity to request a three-member panel; (2) he was denied a reasonable continuance of the hearing, a continuance unopposed even by the State Bar examiner, and as a result his unprepared attorney was forced to proceed in his absence; (3) his motions for a "trial de novo" were denied despite his offer to supplement the record with his declaration showing he had defenses on the merits to both charges; and (4) he was given only three days notice of the review department hearing, thus depriving him of adequate opportunity to prepare. The record refutes these contentions.

1. *Notice of Disciplinary Hearing*

As to notice of hearing, the notice to show cause in this case issued September 17, 1985. Petitioner was certainly aware of the charges against him as his answer was filed January 22, 1986, and settlement conferences

followed. An order directing that the matter be set for hearing was filed May 16, 1986, and was served on his attorney and on petitioner by mail at two Los Angeles addresses. This notice occurred two months before the July 15 hearing, and was thus completely timely. (See rule 554, Rules Proc. of State Bar.)

The claim that somehow petitioner did not have the opportunity to request a three-member hearing panel is not elaborated upon in petitioner's brief and clearly lacks merit. Given ample notice of hearing, petitioner had every chance to request a three-member panel if he so desired; and in the absence of such request, it was proper to proceed with a single referee. (Rule 558(a)(3), Rules Proc. of State Bar.)

### 2. *Denial of Continuance*

■ A more interesting issue involves denial of his request for a continuance. At the time of hearing on July 15, 1986, petitioner's attorney appeared, declared himself unprepared to proceed, and requested that the hearing be continued. Petitioner was not present, and his attorney claimed he had not had an adequate opportunity to confer with petitioner. Despite the fact that the examiner did not oppose the motion, the continuance was denied and the hearing proceeded in petitioner's absence.

We find no abuse of discretion or unfairness in this situation. Petitioner had ample notice of this hearing. Continuances in this circumstance are disfavored; a request for continuance must be supported by good cause; and if good cause does not exist the hearing may proceed in petitioner's absence. (*Palomo* v. *State Bar* (1984) 36 Cal.3d 785, 791-792 [205 Cal.Rptr. 834, 685 P.2d 1185]; rule 555, Rules Proc. of State Bar.) It is an attorney's responsibility to appear at his disciplinary hearing and respond to the charges against him. (*Yokozeki* v. *State Bar* (1974) 11 Cal.3d 436, 447 [113 Cal.Rptr. 602, 521 P.2d 858].)

Further, petitioner has not demonstrated in what respect his representation by counsel at the hearing was inadequate. (See *Dixon* v. *State Bar* (1985) 39 Cal.3d 335, 341 [216 Cal.Rptr. 432, 702 P.2d 590].) His attorney had represented petitioner in matters relating to the dissolution of Mohi, Morales & Glasman, appeared very familiar with the present facts and charges, made opening and closing remarks, reviewed the exhibits, and vigorously cross-examined Mohi. No unfairness is evident.

### 3. *Trial de Novo*

Likewise without merit is petitioner's contention that a trial de novo should have been granted on his offer to establish evidence in his

defense. ■ An attorney who has absented himself from his own disciplinary hearing is not automatically entitled to a rehearing to allow him to present additional evidence. (*Yokozeki, supra,* 11 Cal.3d at p. 447.) His declaration of September 12, 1986, was properly considered by the State Bar in relation to his request for review. (Rules 450, 451, Rules Proc. of State Bar.) We have reviewed that declaration and conclude the review department, which had the power to cause further consideration of these facts, was well within its discretion to proceed with its final recommendation to us. (See rule 452, Rules Proc. of State Bar.)

4. *Notice of Review Department Hearing*

Finally petitioner contends he was given only three days notice of his review department hearing and thus was unable adequately to prepare. (Compare rule 451(a), Rules Proc. of State Bar.) This is plainly untrue. It was at petitioner's request that the hearing was moved from November 13, 1986, to January 30, 1987. When he complained that the hearing was to be held on another unrelated disciplinary matter around the same time, he was notified by telegram sent January 26, 1987, that the unrelated matter would be stayed and this one would proceed. He appeared before the review department which denied his request for continuance. Despite the panel's request that he participate, petitioner apparently walked out.

In sum, no procedural error affected the fairness of the initial disciplinary hearing or the review department proceeding in this case. ■ In any event, as we told petitioner the last time he was here, one must demonstrate prejudice from a procedural error to prevail at this stage. (*Morales, supra,* 35 Cal.3d at p. 7; and see *Stuart* v. *State Bar* (1985) 40 Cal.3d 838, 845 [221 Cal.Rptr. 557, 710 P.2d 357].) He has not done so.

*Degree of Discipline*

■ Finally petitioner objects to the "mandatory recommendation of disbarment" contending it is "ex post facto." The reference is apparently to the Rules of Procedure of the State Bar, division V, Standards for Attorney Sanctions for Professional Misconduct adopted November 22, 1985, and applicable to hearings held after January 1, 1986. In arguing for disbarment, the examiner relied on standard 1.7(b) (providing for disbarment where a member has a record of two prior impositions of discipline) and standard 2.2(a) (providing for disbarment for wilful misappropriation of entrusted funds).

■ These standards are not strictly "mandatory" since by their own terms they permit lesser discipline to be imposed if "the most compelling

mitigating circumstances clearly predominate." They also do not create an ex post facto problem, as we are not dealing with penal statutes. (*Greenbaum* v. *State Bar* (1987) 43 Cal.3d 543, 550 [237 Cal.Rptr. 168, 736 P.2d 754].) And finally while we give great weight to the discipline recommended by the State Bar, the ultimate decision on discipline is our own. (*Guzzetta* v. *State Bar* (1987) 43 Cal.3d 962, 968 [239 Cal.Rptr. 675, 741 P.2d 172]; *Tarver* v. *State Bar* (1984) 37 Cal.3d 122, 133 [207 Cal.Rptr. 302, 688 P.2d 911].)

 In the present case we are presented with breach of fiduciary duty and misappropriation of funds in violation of Business and Professions Code section 6106. (See *Arden, supra,* 43 Cal.3d at p. 726; *Hamilton* v. *State Bar* (1979) 23 Cal.3d 868, 879 [153 Cal.Rptr. 602, 591 P.2d 1254].) We may also consider petitioner's prior record of discipline (*Arden, supra,* 43 Cal.3d at pp. 727-728; *McMorris* v. *State Bar* (1983) 35 Cal.3d. 77, 84 [196 Cal.Rptr. 841, 672 P.2d 431]) and his attitude toward the proceedings against him. (*Alberton, supra,* 37 Cal.3d at p.16; *Yokozeki, supra,* 11 Cal.3d at p. 451.) Finally petitioner's version of events shows at best a lack of remorse and at worst a misrepresentation to this court. (See *Worth* v. *State Bar* (1978) 22 Cal.3d 707, 711 [150 Cal.Rptr. 273, 586 P.2d 588].)

Accordingly, it is ordered that petitioner Frank C. Morales be disbarred from the practice of law and that his name be stricken from the roll of attorneys. It is further ordered that he comply with the requirements of rule 955 of the California Rules of Court and that he perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order. This order is effective upon the finality of this decision.