Opinion
TODD, J.
Appellant, plaintiff in the underlying case, appeals from the judgment for respondent (defendant).
Facts
In this case, appellant, the client of a professional law corporation, paid the corporation $25,000 as a retainer, against which fees would be charged and which was to be replenished monthly. Such funds were not placed in a client trust account. After the sole shareholder of the professional corporation died, appellant sued the individual attorney’s estate for the $24,061.49 owed to the client by the corporation.
Respondent’s decedent, Attorney Jerrold A. Fadem, was the owner of 100 percent of the law corporation in question and was an officer and director of the corporation. At all relevant times, the law firm had more than 30 employees, including an office manager and bookkeeper and at least 4 attorneys. In September 1986, Fadem, as president and on behalf of the law corporation, entered into a written contract with appellant for the provision of legal services with respect to condemnation proceedings. Under the terms *Supp. 5 of the agreement, appellant was required to maintain a $25,000 advance for attorney fees at all times. Appellant was invoiced whenever attorney fees were incurred to maintain the $25,000 balance. The fee advance was not maintained in a trust account, nor was appellant ever advised by anyone on behalf of the law firm that the funds were not kept in a trust account.
On January 13, 1994, Fadem died, and Sidney R. Rose was appointed the personal representative of Fadem’s estate. At the time of Fadem’s death, the law firm owed appellant $24,061.49, the balance remaining on the fee advance. On May 26, 1994, appellant filed its creditor’s claim in the probate proceedings, and on July 26, 1994, Rose rejected the claim. On October 25, 1994, appellant filed the complaint in this case on the rejected creditor’s claim for breach of contract, professional negligence, breach of fiduciary duty, constructive fraud, and common counts.
In the meantime, the corporate law firm was the subject of a court-supervised dissolution proceeding in Los Angeles Superior Court. On June 8, 1994, appellant filed a written claim with the court-appointed receiver in the dissolution proceedings. As of May 15, 1995, the date of the trial in this case, no payments had been received by appellant on its claim in the dissolution.
The matter was submitted to the court for trial on stipulated facts, and on June 28, 1995, the court ruled as follows: “In this matter heretofore ordered submitted on 5-19-95, the Court, having reviewed all pleadings and each cause of action herein as well as the exhibits, the stipulation of facts and the briefs of the parties, now renders its decision as follows: That the plaintiff T & R Foods Inc., a California Corporation, take nothing by reason of its complaint against the answering defendant Sidney R. Rose, as Executor of the will of Jerrold A. Fadem, deceased.” Appellant filed a timely notice of appeal and seeks review of the court’s ruling on the professional negligence, breach of fiduciary duty and fraud causes of action.
Issues
The issues presented in this case are:
1. Does rule 4-100 of the Rules of Professional Conduct of the State Bar of California require advances for attorney fees be kept in trust accounts, segregated from money belonging to an attorney?
2. If there is such a requirement to segregate funds, does failure to segregate funds constitute professional negligence or breach of fiduciary duty?
3. Was Fadem individually liable?
*Supp. 6 Discussion
1. Rule 4-100.
Rule 4-100 of the Rules of Professional Conduct[1] provides: “(A) All funds received or held for the benefit of clients by a member or law firm, including advances for costs and expenses, shall be deposited in one or more identifiable bank accounts labeled ‘Trust Account,’ ‘Client’s Funds Account’ or words of similar import.... No funds belonging to the member or the law firm shall be deposited therein or otherwise commingled therewith except as follows: [<]D (1) Funds reasonably sufficient to pay bank charges. [ID (2) In the case of funds belonging in part to a client and in part presently or potentially to the member or the law firm, the portion belonging to the member or law firm must be withdrawn at the earliest reasonable time after the member’s interest in that portion becomes fixed. However, when the right of the member or law firm to receive a portion of trust funds is disputed by the client, the disputed portion shall not be withdrawn until the dispute is finally resolved.”[2] As noted in Baranowski v. State Bar (1979) 24 Cal.3d 153 [154 Cal.Rptr. 752, 593 P.2d 613], the rule prohibiting commingling a client’s funds with an attorney’s funds “expressly requires that sums advanced to pay costs or expenses be placed in a separate trust account; it does not expressly deal with advance legal fees.” (Id. at p. 163.) We must therefore determine whether the advance fee paid by appellant constituted “funds received or held for the benefit of’ a client.
In Baranowski v. State Bar, supra, 24 Cal.3d 153, the court distinguished an advance fee payment from a “classic ‘retainer fee’ arrangement. A retainer is a sum of money paid by a client to secure an attorney’s availability over a given period of time. Thus, such a fee is earned by the attorney when paid since the attorney is entitled to the money regardless of *Supp. 7 whether he actually performs any services for the client.” (Id. at p. 164, fn. 4.) However, advance fee payments are payments “for the performance of a particular legal service.” (Ibid.)
The court in In re Montgomery Drilling Co. (Bankr. E.D.Cal. 1990) 121 Bankr. 32 also interpreted rule 8-101, stating: “Essentially, three types of retainers exist, being (1) Classic or True Retainers, (2) Security Retainers, and (3) Advance Payment Retainers. [Citation.] Classic Retainers refer to the payment of a sum of money to secure availability over a period of time. Entitlement to the fee exists whether or not services are ever rendered. . . . [1 . . . The Security Retainer is typified by the fact that the retainer will be held by the attorneys to secure payment of fees for future services that the attorneys are expected to render. In such an agreement, the money given as a retainer is not present payment for future services. Rather, it remains property of the Debtor until the attorney applies it to charges for services actually rendered, and any unearned funds are returned to the Debtor. ['][] The third type of retainer, the Advance Payment Retainer, is an agreement whereby the Debtor pays, in advance, for some or all of the services that the attorney is expected to perform on the Debtor’s behalf. This type of retainer differs from the Security Retainer in that ownership to the funds is intended to pass to the attorney at the time of payment. Under California law, the issue of whether ownership of these funds passes to the attorney upon receipt is largely undecided. [Citations.] [*][] In reviewing former California Rules of Professional Conduct 8-101, this Court views the language contained therein as indicating an intent by the State Bar that funds retain an ownership identity with the client until earned. This also comports with the view of the San Francisco Bar Legal Ethics Opinion SF 1980-1; [citation].” (121 Bankr. at pp. 37-38.) We agree with the foregoing interpretation of the language found in rule 4-100 and former rule 8-101.
Here, the agreement stated: “On employment, we request a $25,000 retainer. Fees will be charged against the retainer. The retainer is to be replenished monthly to maintain a $25,000 credit toward fees.” This language clearly shows that the $25,000 retainer was not a classic retainer, but rather an advance payment retainer. We conclude therefore that rule 4-100 required such funds to be segregated until earned.
2. Breach of Fiduciary Duty and Professional Negligence.
In considering whether the failure to segregate the client’s funds constituted negligence or breach of fiduciary duty, we recognize “[t]he purpose served by rule 8-101 [(now rule 4-100)] is [to safeguard the client’s money:] ‘ “ ‘to provide against the probability in some cases, the possibility in many *Supp. 8 cases, and the danger in all cases that such commingling will result in the loss of client’s money.’ ” ’ [Citations.]” (Hamilton v. State Bar (1979) 23 Cal.3d 868, 876 [153 Cal.Rptr. 602, 591 P.2d 1254].) As a fiduciary to the client, an attorney “assumes duties beyond those of mere fairness and honesty . . . —he must undertake to act on behalf of the beneficiary, giving priority to the best interest of the beneficiary. [Citation.]” (Committee on Children's Television, Inc. v. General Foods Corp. (1983) 35 Cal.3d 197, 222 [197 Cal.Rptr. 783, 673 P.2d 660].)
Black's Law Dictionary defines malpractice as “Professional misconduct or unreasonable lack of skill. ... It is any professional misconduct, unreasonable lack of skill or fidelity in professional or fiduciary duties, evil practice, or illegal or immoral conduct.” (Black's Law Dict. (6th ed. 1990) p. 959.) In Day v. Rosenthal (1985) 170 Cal.App.3d 1125 [217 Cal.Rptr. 89], the court stated: “An attorney’s duty, the breach of which amounts to negligence, is not limited to his failure to use the skill required of lawyers. Rather, it is a wider obligation to exercise due care to protect a client’s best interests in all ethical ways and in all circumstances. [*][] The standards governing an attorney’s ethical duties are conclusively established by the Rules of Professional Conduct.” (Id. at p. 1147.) In Schultz v. Harney (1994) 27 Cal.App.4th 1611, 1621 [33 Cal.Rptr.2d 276], the court stated that an attorney’s breach of the ethical duties of good faith and fidelity owed to a client constitutes actionable legal malpractice. We conclude, therefore, that the failure to segregate a client’s funds constituted breach of fiduciary duty and professional negligence.
3. Personal Liability of Fadem.
We must next determine whether Fadem was personally liable for the failure of the law firm to segregate the funds. Appellant concedes it has not raised the issue of whether Fadem was individually responsible as the alter ego of his law corporation or whether Fadem would have been liable for the corporation’s debt based on Fadem’s written guaranty of corporate debts.[3] Rather, appellant asserts Fadem’s individual liability based on the Rules of Professional Conduct and Business and Professions Code section 6167. We therefore review the stipulated facts in consideration of the nature of a legal practice corporation and rule 4-100.
“An important factor in deciding whether to incorporate a professional practice is the extent to which incorporation may limit the professional’s *Supp. 9 liability for the acts of others. Obviously, a professional person cannot avoid personal liability for his or her own malpractice or tortious conduct through incorporation . . . since a tortfeasor is always liable for his or her own acts, even if performed on behalf of another, [f] But, incorporation may enable professional persons to limit the vicarious liability they otherwise would incur for acts of their professional partners. . . . [^D . . . As a condition for registration of a law corporation, the State Bar requires that the corporation provide ‘security for claims against it by its clients for errors or omissions arising out of the practice of law.’ [Citation.] HQ . . . For law corporations registered prior to October 27, 1971, such security may consist either of malpractice insurance with specified limits or a written agreement by all shareholders jointly and severally guaranteeing payment of all malpractice claims against the corporation up to the same specified limits. [Citation.] [^Q . . . For law corporations registered on or after October 27, 1971, such written guarantee is required in all cases; i.e., even if the corporation obtains insurance in the prescribed coverage and limits. [Citation.] [<][]... The effect is to limit the lawyer’s liability for malpractice of other members of the corporation to the limits specified in the insurance or [guaranty] agreement.” (Friedman, Cal. Practice Guide: Corporations 1 (The Rutter Group 1996) ¶¶ 2:272 to 2:275, pp. 2-93 to 2-94.) Thus, a primary purpose for allowing incorporation of a professional practice appears to be to limit a professional’s vicarious liability for the malpractice of others.
Business and Professions Code section 6167 provides: “A law corporation shall not do or fail to do any act the doing of which or the failure to do which would constitute a cause for discipline of a member of the State Bar, under any statute, rule or regulation now or hereafter in effect. In the conduct of its business, it shall observe and be bound by such statutes, rules and regulations to the same extent as if specifically designated therein as a member of the State Bar.” The clear import of this section is that a professional corporation cannot be used to shield a professional from malfeasance through the corporate structure.
“The provisions of the General Corporation Law shall apply to professional corporations, except where such provisions are in conflict with or inconsistent with the provisions of this part.” (Corp. Code, § 13403.) “The Professional Corporation Act[4] has no provision which would alter the general rule of non-liability of shareholders for corporate obligations.” (13 Marsh & Finkle, Marsh's Cal. Corporation Law (1991 supp.) Professional Corporations, § 24.7, p. 2028.1.) However, “a professional person cannot avoid personal liability for his or her own malpractice or tortious conduct through incorporation . . . since a tortfeasor is always liable for his or her *Supp. 10 own acts, even if performed on behalf of another.” (Friedman, Cal. Practice Guide: Corporations 1, supra, ¶ 2:272, p. 2-93.) Thus, in the present case, if Fadem was personally negligent, he should be individually liable to T & R Foods.
The question is then whether Fadem had the professional duty to segregate the client’s funds such that Fadem, rather than some other employee of the law corporation, was negligent in failing to segregate the funds. “A professional corporation which has only one shareholder need have only one director who shall be such shareholder and who shall also serve as the president and treasurer of the corporation.” (Corp. Code, § 13403.) Thus, Fadem was required by law to be the corporation’s president and treasurer. The stipulated facts establish that Fadem was the president, sole shareholder and a director of the law corporation. They further establish that Fadem entered into the contract on behalf of the corporation with the client, was the lead attorney and performed the majority of the services rendered to the client. Based on these facts we find that Fadem personally had the duty to ensure that the client’s funds were placed in a client trust fund as required by rule 4-100.[5] The stipulated facts do not, however, support a claim for fraud as there is no evidence that appellant would not have acted as it did had it known the funds were not segregated.
The judgment is reversed as to the second and third causes of action, for professional negligence and breach of fiduciary duty, and the court is ordered to enter judgment in favor of appellant and against respondent in the sum of $24,061.49. Appellant to recover costs on appeal.
Roberson, P. J., and Johnson, J., concurred.

All further references to rules will be to the Rules of Professional Conduct unless otherwise indicated.

Rule 4-100 replaced rule 8-101 as of May 27,1989. This former rule provided in relevant part: “(A) All funds received or held for the benefit of clients by a member of the State Bar or firm of which he is a member, including advances for costs and expenses, shall be deposited in one or more identifiable bank accounts labeled ‘Trust Account,’ ‘Client’s Funds Account’ or words of similar import. . . and no funds belonging to the member of the State Bar or firm of which he is a member shall be deposited therein or otherwise commingled therewith except as follows: [H (1) Funds reasonably sufficient to pay bank charges may be deposited therein. [H (2) Funds belonging in part to a client and in part presently or potentially to the member of the State Bar or firm of which he is a member must be deposited therein and the portion belonging to the member of the State Bar or firm of which he is a member must be withdrawn at the earliest reasonable time after the member’s interest in that portion becomes fixed. However, when the right of the member of the State Bar or firm of which he is a member to receive a portion of trust funds is disputed by the client, the disputed portion shall not be withdrawn until the dispute is finally resolved.”

We note that no evidence was offered by appellant on the issue of alter ego. As for the personal guaranty, although Fadem’s written guaranties were received in evidence, appellant does not rely on the guaranties as a basis for liability.

4Corporations Code section 13400 et seq.

We note that in another context, an attorney employed by a law corporation was held to be personally liable for the law corporation’s failure to pay payroll deductions to the state. (In re Morales (1983) 35 Cal.3d 1, 6 [196 Cal.Rptr. 353, 671 P.2d 857].)